1  STRANGE & CARPENTER
   Brain R. Strange (Cal. Bar. No. 103252)
2  LACounsel@earthlink.net
   12100 Wilshire Boulevard, Suite 1900
3  Los Angeles, CA 90025
   Telephone: (310) 207-5055
4  Facsimile: (310) 826-3210

5
   Joseph H. Malley (not admitted)
6  malleylaw@gmail.com
   Law Office of Joseph H. Malley
7  1045 North Zang Blvd
   Dallas, TX 75208
8  Telephone: (214) 943-6100
   Facsimile: (214) 943-6170
9

10 *Attorneys for Plaintiff*

11          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF CALIFORNIA
12

13 OSCAR HERNANDEZ, individually and on        CASE No.
14 behalf of a class of similarly situated
   individuals,                                CV 12 1515
                                               DEMAND FOR JURY TRIAL
15
                        Plaintiff,             CLASS ACTION COMPLAINT FOR:
16
17 v.                                          1.  Violations of the Electronic
                                                   Communications Privacy Act, 18 U.S.C. §
18                                                 2510 *et seq.*;

19 PATH, INC., a Delaware Corporation,         2.  Violations of the California Computer
                                                   Crime Law, Penal Code § 502;
20                      Defendant.
                                               3.  Violations of California's Invasion of
21                                                 Privacy Act, California Penal Code § 630
                                                   *et seq.*;
22
                                               4.  Violations of the California Unfair
23                                                 Competition Law, Business and
                                                   Professions Code § 17200 *et seq.*;
24
                                               5.  Violations of the California Consumers
25                                                 Legal Remedies Act, Civil Code § 1750 *et
                                                   seq.*;
26
                                               6.  Violations of the California Customer
27                                                 Records Act, Cal. Civ. Code § 1798.80 *et*
28

ORIGINAL
FILED

MAR 2 6 2012

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-filing

seq.;

7.   Invasion of Privacy and Seclusion and Public Disclosure of Private Facts;

8.   Conversion;

9.   Trespass to Personal Property / Chattels; and

10.  Unjust Enrichment

## CLASS ACTION COMPLAINT

Plaintiff, Oscar Hernandez (hereinafter referred to as "Plaintiff"), by and through his attorneys Strange & Carpenter and Law Office of Joseph H. Malley, P.C., brings this action on behalf of himself and all others similarly situated against Defendant Path, Inc. Plaintiff's allegations as to himself and his own actions, as set forth herein, are based upon his information and belief and personal knowledge, and all other allegations are based upon information and belief pursuant to the investigations of counsel. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), as set forth below.

## I.   NATURE OF THE ACTION

1.    Plaintiff brings this consumer Class Action lawsuit pursuant to Federal Rules of Civil Procedure 23(a), (b)(1), (b)(2), and (b)(3), on behalf of himself and a proposed class of similarly situated individuals ("Class Members", and with Plaintiff, hereinafter referred to as the "Class"), who were victims of unfair, deceptive, and unlawful business practices; wherein their property, privacy, and security rights were violated by Defendant Path, Inc. (hereinafter referred to as "Defendant" or "Path"), that acted individually, and in concert, interacting via Path's client-side device application (the "Path App") to interface with the Plaintiff's and Class Members' mobile computing devices, referencing mobile electronic devices used for communication over a cellular network, that include internet and multimedia capabilities, and contain an Application Programming Interface ("API") that executes third-party mobile applications ("Apps")

(hereinafter referred to collectively as "Mobile Devices") to:

1) Intercept electronic communications of Plaintiff and Class Members interacting with their contacts while communicating within other online social networks;

2) Intercept electronic communications of Plaintiff and Class Members, including but not limited to, fine GPS location coordinates (exact latitude and longitude) for purposes unrelated to any authority granted to Defendant;

3) Access, use, disseminate, retain, and store, without authorization or notice, electronic communications of Plaintiff and Class Members within their Mobile Devices;

4) Access, use, disseminate, retain, and store, without authorization or notice, Plaintiff's and Class Members' contact address data contained within their Mobile Devices;

5) Affix to Plaintiff's and Class Members' digital content, referencing photos, videos, and audio files, without notice or authorization, tracking mechanisms and information, including GPS location coordinates with exact latitude and longitude;

6) Associate the compiled data with Plaintiff's and Class Members' information to track behavioral interactions and usage data for advertising and marketing purposes; and

7) Disseminate, without Plaintiff's or Class Members' knowledge or consent, that Personally Identifiable Information ("PII") data to third parties.

2.     The nature of this action includes a sequence of events wherein Defendant gained access to, and use of, Plaintiff's and Class Members' Mobile Devices, without authorization and consent, to obtain and store contact address data, including PII of minor children that was within the contact address book, bypassing the technical and code-based barriers intended to limit access, in addition to bypassing the Plaintiff's and Class Members' privacy settings, including offsite social network settings. The Defendant perpetuated this fraudulent activity knowingly, and with the intent to obtain data, including the mobile browsing activities of its users, which include the Plaintiff and Class Members.

3.     Defendant acted independently and in concert with third parties and knowingly authorized, directed, ratified, approved, acquiesced, or participated in, conduct made the basis of

this class action. Defendant used Plaintiff's and Class Members' Mobile Devices to access, use, disclose, retain, and store PII derived in whole, or part, from Plaintiff's and Class Members' Mobile Devices' contact address book to develop a database and track user interactions with these contacts, including installing geo-tagging within digital content to implement tracking cookie mechanisms in order to monitor social network "interactions." Defendant accomplished this covertly, without actual notice or consent of its users, nor that of the contacts of the users which were not Path members, and which information Defendant obtained deceptively, for purposes not disclosed within their Terms of Service or Privacy Policy, for objectives which included Defendant's commercial gain and nefarious purposes.

4.    Defendant acted individually and also in concert with entities involved in advertising networks, data exchanges, traffic measurement service providers, marketing companies, and analytic service providers that develop and service Mobile Device Apps, referred to collectively as "Path Affiliates," to conduct the activities made the basis of this action.

5.    Each Path Affiliate committed acts, made the basis of this action, individually and jointly, both intentionally and negligently, in whole or part, acting as a direct or contributory party to the activities made the basis of this action. Pending discovery of the Path Affiliates' knowledge and involvement at the various stages of the acts complained of, and made the basis of this complaint, Plaintiff will amend the complaint to include such parties.

6.    Defendant, individually, and in concert with Path Affiliates, has been systematically engaged in and facilitated a covert operation of surveillance of Class Members in violation of the following, to wit:

1)    Violations of the Electronic Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*;

2)    Violations of California Computer Crime Law, Penal Code § 502;

3)    Violations of California's Invasion of Privacy Act, California Penal Code § 630 *et seq.*;

4)    Violations of California Unfair Competition Law, Business and Professions Code § 17200 *et seq.*;

5)    Violations of California Consumers Legal Remedies Act, Civil

1    Code § 1750 *et seq.*;

2    6)    Violations of California Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*;

3

4    7)    Invasion of Privacy and Seclusion and Public Disclosure of Private Facts;

5    8)    Conversion;

6    9)    Trespass to Personal Property / Chattels; and

7    10)    Unjust Enrichment

8    ## II. PARTIES

9    7.    Plaintiff Oscar Hernandez is a resident of Dallas County, Texas.

10    8.    Defendant Path, Inc. is a privately held Delaware corporation headquartered at

11    301 Howard Street, Suite 2200, San Francisco, California 94105.  Path does business throughout

12    the State of California and the United States.

13    ## III. JURISDICTION AND VENUE

14    9.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness

15    Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship

16    from Defendants; there are more than 100 class members nationwide; and the aggregate amount

17    in controversy exceeds $5,000,000 and minimal diversity exists.

18    10.    This Court has jurisdiction over Defendant Path because it is a corporation

19    headquartered in San Francisco County, California, and is a citizen of the state of California.

20    Plaintiff asserts claims on behalf of a proposed Class whose members are domiciled throughout

21    the fifty states and the U.S. territories.  There is minimal diversity of citizenship between

22    proposed Class Members and Defendant.

23    11.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Path is a

24    corporation headquartered in San Francisco County, California, and/or because the improper

25    conduct alleged in this Complaint occurred in, was directed from, and/or emanated from this

26    judicial district.

27    ## IV. INTRADISTRICT ASSIGNMENT

28    12.    Pursuant to Local Rules 3-5(b) and 3-2(c), this action should be assigned to the

1    San Francisco Division or Oakland Division of the Northern District of California because

2    Defendant resides in San Francisco.

3        13.    This Complaint details these allegations, the statutory and common law remedies

4    Plaintiff seeks for these wrongs, including injunctive remedies and accountability for those

5    entities responsible.

## V.   PLAINTIFF'S AND CLASS MEMBERS' EXPERIENCES

7        14.    Class Members are United States residents who experienced the same occurrences

8    as Plaintiff Oscar Hernandez.

9        15.    Plaintiff Oscar Hernandez experienced the following occurrences named herein:

10           a.    Plaintiff owns and uses one or more Mobile Devices that have a
                   contact address book stored within the Mobile Device;

11           b.    Plaintiff downloaded and used Defendant's Path App during the
12                 Class Period (as defined below);

13           c.    Plaintiff used his Mobile Device to access Defendant's Path App to
14                 upload and share digital content, such as photos, audio, and video;

15           d.    Plaintiff used his Mobile Device to visit other social networks,
                   interacting with individuals included within his contact address
16                 books and those not within his contact address books;

17           e.    Plaintiff was subjected to the unauthorized access, use,
18                 dissemination, collection, and storage of PII by Defendant Path;

19           f.    Plaintiff was unaware of the harm that would be imposed on him
                   by Defendant when he downloaded the App, including the use,
20                 retention and storage of his Mobile Devices' contact address data,
                   "filtering" of digital content by installation of geo-tags for
21                 tracking, interception and monitoring of social network
                   "interactions," the appropriation of his Mobile Device resources
22                 and bandwidth, as well as the exploitation of his personal
23                 information;

24           g.    Plaintiff had no knowledge that his third-party social network
                   interactions would be monitored and then transmitted, used,
25                 disclosed, and stored on Path's servers. Worse yet, all of the
                   Plaintiff's contact address book and interactions data that was
26                 stored on Path's servers and/or third party servers was stored in an
                   unreasonably insecure manner contrary to accepted standards, in a
27                 way that is well-recognized to be easily accessible by even an
28                 unsophisticated hacker;

h. Plaintiff did not consent to having his data collected by Defendant and Path Affiliates. Had Plaintiff known of Defendant's practices within its ecosystem, he would not have downloaded the Path App. Plaintiff was induced to download Defendant's Path App along with the promise of a free, safe, and reliable App. Defendant induced users to download its Path App by offering the service as a "free" App. However, Defendant failed to disclose to Plaintiff that its "free" App would obtain and store the Plaintiff's Mobile Device contact address book on Path's and/or third-party servers, and cost him so greatly in terms of harm to his secure personal information;

i. Plaintiff was not aware that Defendant would allow third parties to utilize Path-enabled tools to collect Plaintiff's information without detection. For example, when Plaintiff used the Path App, its web analytic entities and ad networks routinely sent information about Plaintiff to Defendant and third parties that amassed and analyzed such data, which it used to uniquely identify and track Plaintiff and Plaintiff's contacts without ever providing Plaintiff a clue he was also being watched after leaving the Path App platform by Defendant and mobile analytics companies and ad networks. Moreover, information transmitted through Defendant's Path App to third parties was transmitted in an unreasonably insecure manner—contrary to accepted standards—and in a way that is well-recognized to be easily intercepted by even an unsophisticated hacker sitting near a wireless hotspot;

j. Plaintiff never authorized Path to cause such information to be shared with any third-party advertising network or analytics provider, or be used for third party advertising purposes. Plaintiff considers his personal information to be private property and a confidential asset.

k. Plaintiff had no means to avoid the data collection and tracking by Path and the third party services because Path controls its ecosystem, Path controls what its Path App can and cannot transmit to third parties, and Path controls the fact that its customers are kept oblivious about the contact address book storage process built into its ecosystem;

l. Plaintiff could not learn about the tracking that goes on except through unreasonably burdensome efforts, such as those required in the investigations underlying these allegations;

m. Defendant's acts were based on their commercial benefits. Defendant obtains revenue by marketing Path's ostensibly "free" App, and the availability of its "free" App is tied to the availability of free data, including but not limited to the Path App user's stored contact address data and data derived from the user's social network interactions with non-Path members by tracking Plaintiff

and others, who had no idea what they were giving up in terms of personal data, when they downloaded the "free" Path App;

n.    Despite Plaintiff's explicit privacy settings to the contrary, Defendant continues to track and store information about Plaintiff and millions of other consumers, including minor children below the age of thirteen, who are non-Path users that Path users have interacted with on their Mobile Devices;

o.    Plaintiff and Class Members seek to have Defendant cease its unauthorized activities and seek remedies to obligate Defendant to discontinue them in the future, provide notice of any and all third parties that accessed the users' data, provide notice of any and all data obtained, allow approved parties to destroy all data, and recover damages.

16.    Plaintiff and Class Members have standing to bring this case under Article III of the United States Constitution as follows:

a.    Plaintiff and Class Members have standing by virtue of alleging concrete, tangible, and non-speculative injuries in fact, arising from violations of Federal statutes, California statutes and common law. The statutes and law at issue herein create legal rights, the invasion of which creates standing;

b.    Plaintiff and the Class Members are within the zone of persons sought to be protected by these laws, and if such parties cannot protect such interests and seek either remuneration or injunctive relief, they would have no mechanism available to hold Defendant accountable for such misconduct;

c.    Plaintiff and Class Members have each suffered harm and economic injury as a result of Defendant's actions. Plaintiff and Class Members used Path's services, and Defendant accessed, used, disclosed, retained and stored Plaintiff's and Class Members' contact address books, which contain confidential and private personal data of tangible value. Plaintiff's and Class Members' personal data is property that was accessed, used, disclosed, retained, and stored by Defendant without notice or authorization. Plaintiff and Class Members did not know this was occurring, and Defendant did not have Plaintiff's or Class Members' permission to access such data in the absence of Plaintiff's and Class Members' knowledge or consent. Plaintiff's and Class Members personal data assets include, but are not limited to, users' contact data, demographic information, geolocation information, and application usage habits. This information has clear tangible value, as it can be bought and sold in the advertising and marketing industry markets;

d.  Plaintiff and Class Members each suffered harm and economic injury as a result of Defendant's actions since Defendant has used its Path App to install tracking mechanisms within Plaintiff's and Class Members' digital content, which has been disseminated to large numbers of individuals associated with Plaintiff and Class Members, and downloaded within the Plaintiff's and Class Members' Mobile Devices' memory, and that of the Plaintiff's and Class Members' contacts mobile and computing devices. Plaintiff and Class Members shall have to pay substantial sums to technical experts to review each and every item of digital content within their Mobile Devices' memory to determine which of the digital content were accessed by Path's digital content "filter" functions in order to delete Path's tracking mechanisms;

e.  Plaintiff and Class Members have each suffered harm and economic injury as a result of Defendant's actions since Defendant has intercepted electronic communications and monitored offsite social network "interactions";

f.  Plaintiff and Class Members have each suffered harm and economic injury as a result of Defendant surreptitiously including in the Path App software certain code components that Plaintiff and Class Members would not reasonably have expected to be included, and which were installed, along with the expected software, on their Mobile Devices without their permission, and which consumed portions of the "cache" and/or gigabytes of memory on their Mobile Devices—memory that Plaintiff and Class Members paid for the exclusive use of when they purchased their Mobile Devices;

g.  Plaintiff and Class Members have each suffered harm and economic injury as a result of Defendant's conduct which has imposed undisclosed data transmittal costs on Plaintiff and Class Members;

h.  Plaintiff and Class Members have each suffered harm and economic injury to their personal information;

i.  Plaintiff and Class Members have each suffered harm and economic injury in that Defendant violated Plaintiff's and Class Members' legally protected privacy right to seclusion in their affairs by, in the aggregate, Defendant collecting Plaintiff's and Class Members' PII, to de-anonymize Plaintiff and Class Members and to personally identify them, their associations, and their activity with individuals outside of the Path App ecosystem;

j.  Plaintiff and Class Members possess an ownership interest in their data that belongs to them and is subject to their control and alienability, and is a valuable commodity that has a property

market value to advertisers. Plaintiff and Class Members thus have had property, with an independent value, taken from them by it passing beyond their control without compensation;

k.    As such, information was taken without their full knowledge or consent and without Plaintiff and Class Members having obtained any compensation for the raw material taken from them; and

l.    Such losses constitute classic Article III injuries in terms of an uncompensated loss for which this Court can provide redress.

## VI.  FACTUAL BACKGROUND

### 1.  General Overview

17.    On February 15, 2012, House Energy & Commerce Chairman Henry Waxman sent a letter to Apple requesting information following complaints that some smartphone Apps were accessing and retaining users' contact data without permission. The inquiry requested documentation revealing its investigation would focus on Apps that read ("sniff") a user's contact address book upon initial activation, without notice or authorization, ostensibly to locate user's "friends" within the App. The impetus for this inquiry by Representative Waxman originated when a researcher discovered Path's unauthorized access to, and retention of, its users' contact address data. However, attention was quickly diverted to the entire App industry when Path's CEO David B. Morin claimed that this was a "common practice." With attention diverted away from Path, and an inquiry initiated against an entire industry's common practice, Path's "uncommon practices" as to how it used the contact address data was ignored and attention was not given to an analysis of its provisional application number 61/363,081, filed July 9, 2010, entitled "System and Method for Social Interaction with Geolocation and Automated Aging and Pruning of Interactions and Contacts."

18.    On March 5, 2012, United States Senator Charles Schumer requested the Federal Trade Commission to investigate additional concerns that surfaced regarding mobile device Apps that were accessing users' location data, and uploading users' photos and video files, without notice or authorization.

19.    On March 22, 2012, Representative Waxman and Commerce, Manufacturing, and Trade Subcommittee Ranking Member G. K. Butterfield sent letters to 34 sellers of social Apps,

1  including Path, inquiring about their information collection and use practices.

2      20.     However, absent from these inquiries were the underlying reasons for this current

3  App industry practice that was surging in popularity and implemented by Defendant: to provide a

4  platform which permitted uploads of digital content to allow a "GPS filtering process." This

5  process includes, but is not limited to, digital content geo-tagging to correlate such with users'

6  content, including contact address book data, for mobile tracking of on-line social network

7  "interactions" with contacts, a tracking mechanism referred to herein as "Filter Cookies."

8      21.     While Path's practices include the unauthorized interception, use, and storage of

9  contact address data, a review of Path's provisional patent application reveals a higher level of

10  tracking than that carried out by other Apps. Path's "uncommon practices" include tracking its

11  users' interactions with the users' contacts in online social networks, correlating the user's

12  contact address data with digital media content that has been altered ("fingerprinted") to include

13  exact GPS latitude and longitude coordinates, as revealed and implemented in its tracking

14  protocol:

> "Tracking future interactions between the member and the contact in the
> on-line social network."

Path's Provisional Application No. 61/363,081, filed on July 9, 2010.

## 2.  A Brief Overview of Path, Inc.

22.     Path, Inc. is a privately owned corporation, headquartered in San Francisco,
California, that operates an online business as a smartphone-based social network utilizing an
application software that performs specific functions for a web-based platform on mobile
devices. Launched in November 2010, Path can be found online at https://path.com/, and
describes its business as: "A smart journal that helps you share life with the ones you love."

23.     Path's launch App, "Path v. 1," initially allowed its users to post photos and add
tags for people, places, and things. While not a technologically innovative concept for Apps,
there was an added limitation that users could only include fifty connections, which actually was
a marketing innovation. This limitation related to a marketing plan to promote a corporate
philosophy to create a more authentic experience with the user's closest friends instead of trying

1   to "make the world a more open place," which is another social network's motto.

2      24.    Path's business model appeared to the mobile App industry to be anti-social, not

3   lending itself to viral levels of user adoption, lacking "robust" features, and doomed to failure.

4   However, a few "insiders," such as Google, which reportedly offered $100 million to purchase

5   this new startup, understood the viral implications revealed in Path's provisional applications.

6   While Path's business model is different, its business plan is the same as most App developers

7   interested in profits: provide a nominal service to attract users with the common objective to

8   obtain and sell user data.  An App's existence and prospects for funding by venture capitalists

9   ("VCs") is often premised upon user data acquisition, since user data is a "commodity" for sale.

10  The dilemma for App developers is how to obtain substantial amounts of user data without a

11  user's knowledge.  It is well known that users who are asked to opt-in to provide personal info

12  will not agree to such due to privacy concerns.  Such hesitation will ultimately cause users not to

13  provide data, which will terminate VC funding, and then the Apps would cease to exist.

14     25.    Path originated within a mobile App economy created by Apple and Google's

15  Android platform that led to the development of hundreds of thousands of task-specific Apps,

16  from games and content Apps, to personal utilities and social networking services.  A second

17  generation mobile App design, Path began as a mobile App launched first for Mobile Devices, as

18  opposed to a mobile App designed to complement an established online website (the first

19  generation of mobile Apps were online websites merely copying their website design and placing

20  the site on a mobile device App).

21     26.    In March 2011, Path activated its integration function in "Path v1.5" for online

22  social networks so that its "Friend Rank" algorithm could follow its users from the Path App to

23  the users' other social networking platforms.  Without such functionality, Path was unable to

24  expand since its users could not "push" content from Path to social networks such as Facebook.

25  This integration function was necessary for Path's plan for data collection of its users'

26  "interactions" with contacts while in third-party on-line social networks.

27     27.    In November 2011, Path re-launched as "Path 2.0," incorporating a set of

28  activities - Photos, People, Places, Music, Thoughts and Sleep/Awake status - that users could

1    post to their timeline and share with their network. By initially focusing on these social services,

2    Path's mobile functionality could now compete with the most popular mobile Apps available,

3    including functions such as:

4        •     Photos, incorporating image-filters;

5        •     A check-in service to allow the location data to be posted;

6        •     An ability to insert song clips into a user's timeline; and

7        •     Allowing users to post comments to be shared to both a user's Facebook

8                 and Twitter accounts.

9       28.     By leveraging design, Path attempted to consolidate its services into a single App

10    in order to aggregate individual App experiences. Path was attempting to create its own set of

11    services (Photos, Music, Sleep/Awake status) through the use of Application Programming

12    Interface ("API"). This mobile-only experience within Path's App allowed users to not only

13    participate in these underlying networks, but also aggregate the engagement within Path's own

14    App.

15       29.     The underlying premise for Path's provisional application, co-invented by Path

16    CEO David Morin, was its API that allowed for the monitoring of electronic communications

17    (referred to herein as "Interactions") between its users with their contacts, including **non-Path**

18    **members**, within third-party online social networks. Developing this "Path Connect Platform"

19    for mobile devices derived in whole or part, from the Facebook Platform and Facebook Connect,

20    hereinafter referred to collectively as the "Facebook Connect Platform." The Facebook Platform

21    provided a foundation for App developers, while Facebook Connect allowed App developers to

22    track users as they connected with other websites and social networks. The Facebook Connect

23    and Facebook Platforms were co-invented by Morin while he was a Facebook employee. Path's

24    provisional application was filed on July 9, 2010, a few months after Morin reportedly left

25    Facebook in February 2010.

26       30.     The underlying purpose for the Path App was data mining of Mobile Devices to

27    obtain PII, as opposed to a platform for content aggregation. This provided the ability to

28    eliminate substantial server costs and allowed access to user content that provided tracking data

1 and an immediate established platform.

2    31.    Aggregation of users' data as content evolved over time from methods used by

3 search engines evolving from being operating systems to only aggregate content to actual content

4 creation. Search engines then progressed to re-aggregating the content until socially-oriented

5 sites provided a forum for their users to create the content. As Apps first emerged, online social

6 networks sought to aggregate user data within their own social network platform, thus

7 controlling the user engagement within the social network. An example of this is Apps made by

8 Zynga within the Facebook Platform. As App development exploded in 2008, Apple, and then

9 Google in its Android market, sought to create a platform for Apps independent of a social

10 network platform. However, there remained no available platform for App developers to draw a

11 social context from data available in a social network platform. Facebook Platform Connect

12 sought to provide a system and method to remedy this dilemma, by providing a platform that

13 permitted access to its social network that allowed a social context to Apps that were external to

14 Facebook. However, the social networks provide only limited information, and do not offer a

15 social context to the App. That is, a user of the third-party App could not see what other users of

16 the social network were doing, or access information about other users of the social network that

17 was not publicly available information.

18    32.    Facebook Platform Connect provided a system and method for providing a social

19 context to software Apps. A user of a social network could authorize access by an external

20 software App to information available in the social network. When the users of the social

21 network use the external App, the App contacts the social network provider for permission to

22 access the information available in the social network. If access has been authorized, the App

23 incorporates the information from the social network into its interaction with the user, providing

24 a social context to the user's interaction with the App.

25    33.    Facebook Platform Connect also provided a platform for using a social network to

26 provide a social context to a software App that was external to the social network, such as an

27 App developed by third-party developers like Path, rather than the social network provider, and

28 which did not reside within the social network or social network provider. A social context

comprises information that personalizes the interaction of a user with the software App. Installation did not require the user's downloading the App onto their Mobile Devices, enabling the user to interact directly with the App while the App itself remains on another device. Installation could also allow the App to access information about the user that was available through the social network platform.

34.    A certain design point of the Path App architecture are the icons on the screen page which reveal functions that involve digital content, user content, GPS location information, and network access.  The design is a simple but quite effective way to provide the mechanisms required for substantial user data collection, precise tracking of the user, and an ability to "turn on" the device for data collection and monitoring without the user's involvement.  Path's ability to have continuous network access to the users' device is marketed to the public as a service to notify users' friends if the user is asleep or awake by the use/non-use of the Mobile Device. Using the three most prevalent types of digital content - photo, video, and audio - Path also inserts a tracking mechanism to associate exact GPS location, thus allowing the user to act as a "host" while they interact with their contacts within online social networks.

35.    Many Apps, such as Twitter, Facebook, LinkedIn, Gowalla and Foodspotting, offer their users limited notice of their activities regarding contact address book data by using a "Find Friends" pop-up when the user initiates an action in the App.  Path's activities were not typical of the noted Apps.  Path obtained the Plaintiff's and Class Members' contact address data immediately after the App was downloaded, without any user activity.

36.    While Path claims it accessed the Plaintiff's and Class Members' contact address data only to assist users to find their friends on the Path App, Path's provisional application revealed a "Friend Rank Algorithm" that required such data to monitor the interactions of the user with those contacts.  The following Claims are from the provisional application:

•      A computer implemented method of aging and removing a member contact in an on-line social networking system, the method comprising: assigning at least one initial expiration parameter as a current expiration parameter for the contact identified by the member associated with a first interaction in the on-line social network; tracking future interactions between the member and the contact in the on-line social network;

• The method as in claim 1, wherein: the initial expirations parameter comprises an expiration date that is assigned by default to every new member contact;

• The method as in claim 1, wherein: the tracking of future interactions between the member and the contact in the on-line social network comprises tracking each of the future interactions since the initial interaction and applying a weight to each interaction; and

• An on-line social networking system comprising: a server computer coupled with or including a database and a data structure defined therein for storing data; the server computer including a expiration assignment engine that assigns at least one initial expiration parameter as a current expiration parameter for a contact identified by a social network member associated with a first interaction between the member and the contact in the on-line social network.

37. Path's designs also are streamlined to expedite users' access and use of its core functions. Online social networks, such as Facebook, provide barriers to users since there are multiple screens required to be accessed before they can upload digital content. With the advent of mobile Apps, users are gravitating towards platforms that have more speed and simplicity for uploads, such as Path.

38. By December 2011, Path's membership had grown from 30,000 to over 300,000 in less than a month:

> In the two months since Path 2 launched, it has attracted a million new users, according to Path CEO Dave Morin. That's roughly the same amount Path got in its entire first year. . . .
>
> Path users have created over 50 million items of content and half a billion pieces of feedback. The latter is a somewhat inflated stat, because "feedback" is created every time a user looks at content on Path. But for reference, there are 15 million pieces of feedback created on Path per day now, versus 10 million total in the first year, Morin said.

"Path Now Has 2M Users, Having Doubled Since It Relaunched Two Months Ago," February 3, 2012, online at: http://allthingsd.com/20120203/path-now-has-2m-users-having-doubled-since-it-relaunched-two-months-ago/.

39. While Path heralded its success, there was no explanation provided for Path's miraculous rapid growth, increasing its user base tenfold within just one month. A researcher's findings four months later would provide insight into the reasons for such success.

### 3. Thampi Study - Path's Deceptive Practices Revealed

40. On February 8, 2012, Arun Thampi discovered that Path was uploading its users' entire contact address books to its servers.

41.    A contact address book is a database within a Mobile Device for storing entries called "contacts." Each contact consists of a few standard fields of data, including but not limited to, contact names, phone numbers, mailing addresses, e-mail addresses, instant message screen names, job title, employer, websites, birthdays, and notes.

42.    Thampi's discovery was made by using a software tool called mitmproxy, which relies on a common methodology referred to as the "man-in-the-middle," which analyzes data sent to and from an App in real time. The findings were reported as follows:

> I noticed that my entire address book (including full names, emails and phone numbers) was being sent as a plist to Path. Now I don't remember having given permission to Path to access my address book and send its contents to its servers, so I created a completely new "Path" and repeated the experiment and I got the same result – my address book was in Path's hands. . . .

> The Trail of Events

> 1. https://api.path.com/1/users.plist

> As soon as you create a new account to Path, a call is made to https://api.path.com/1/users.plist with your first name, last name, gender and password. An [sic] plist is returned which contains the user's ID as well as other information such as the date of creation.

```
2012-02-08 01:24:28  POST https://api.path.com/1/users.plist
2012-02-08 01:24:30    <- 200 text/plist, 517B
Request
Host:              api.path.com
User-Agent:        Path/2.0.5 CFNetwork/548.0.4 Darwin/11.0.0
Content-Length:    86
Accept:            */*
Content-Type:      application/x-www-form-urlencoded
Accept-Charset:    utf-8
X-PATH-CLIENT:     iOS/2.0.5
X-PATH-TIMEZONE:   Asia/Singapore
X-PATH-LOCALE:     en_SG
X-PATH-LANGUAGE:   en
Accept-Language:   en-us
Accept-Encoding:   gzip, deflate
Connection:        keep-alive
Proxy-Connection:  keep-alive


URLencoded data:

gender:            male
password:          [_____]
first_name:        Arun
email:             arun@anideo.com
last_name:         Thampi
```

**2. https://api.path.com/3/moment/feed/home?all_friends=1**

This API call uses basic HTTP authentication (with a certain key) to obtain some metadata about myself – from the binary plist file it looks like it contains my first name, last name, cover photo, profile picture, etc.

```
2012-02-08 01:24:31  GET https://api.path.com/3/moment/feed/home?all_friends=1
2012-02-08 01:24:32    <- 200 application/x-plist, 1.76kB
Request
Host:               api.path.com
User-Agent:         Path/2.0.5 CFNetwork/548.0.4 Darwin/11.0.0
Accept:             */*
Authorization:      Basic [                                    ]
Accept-Charset:     utf-8
X-PATH-CLIENT:      iOS/2.0.5
X-PATH-TIMEZONE:    Asia/Singapore
X-PATH-LOCALE:      en_SG
X-PATH-LANGUAGE:    en
Accept-Language:    en-us
Accept-Encoding:    gzip, deflate
Connection:         keep-alive
Proxy-Connection:   keep-alive
```

**3. https://api.path.com/3/contacts/add**

This is the actual offending call which uploads my entire address book to Path.

```
2012-02-08 01:24:31  POST https://api.path.com/3/contacts/add
2012-02-08 01:24:32    <- 200 application/x-plist, 55B
Request
Host:               api.path.com
User-Agent:         Path/2.0.5 CFNetwork/548.0.4 Darwin/11.0.0
Content-Length:     11384
Accept:             */*
Authorization:      Basic [                                  ]
Content-Type:       multipart/form-data; boundary=------9BFE2C09-0B0A-4280-914C-2E48D9FA06E3
Accept-Charset:     utf-8
X-PATH-CLIENT:      iOS/2.0.5
X-PATH-TIMEZONE:    Asia/Singapore
X-PATH-LOCALE:      en_SG
X-PATH-LANGUAGE:    en
Accept-Language:    en-us
Accept-Encoding:    gzip, deflate
Connection:         keep-alive
Proxy-Connection:   keep-alive


--------9BFE2C09-0B0A-4280-914C-2E48D9FA06E3Content-Disposition: form-data; name="post"Content-
....".).....5.=.B.G.L.U.].b.s.{......................................".'.,.1.6.
```

This is followed by normal API calls which among others, updates my location, fetches my activity stream and tracks events within the app using Mixpanel.

Arun Thampi, "Path uploads your entire iPhone address book to its servers," February 8, 2012 (last accessed March 18, 2012), online at: http://mclov.in/2012/08/path-uploads-your-entire-address-book-to-their-servers.html.

43.     The Defendant's patent revealed its use of the Plaintiff's and Class Members' digital content affixed with GPS, contacts, and user metadata, to capture content derived from interactions:

Patent application title: AUTOMATED AGING OF CONTACTS AND CLASSIFYING RELATIONSHIPS

> Inventors:  David B. Morin (San Francisco, CA, US)  Shawn D. Fanning (San Francisco, CA, US)  Dustin R. Mierau (San Francisco, CA, US)  Daniel S. Dofter (San Francisco, CA, US)  Matthew M. Matteson (San Francisco, CA, US)  Mark Lewandowski (San Francisco, CA, US)  Mary Ann Brennan (San Francisco, CA, US)  Daniel Trinh (San Francisco, CA, US)  Mallory Paine (San Jose, CA, US)
> Assignees:  Path, Inc.
> IPC8 Class: AG06F1516FI
> USPC Class: 709205
> Class name: Cooperative computer processing
> Publication date: 01/12/2012
> Patent application number: 20120011204
> Read more: http://www.faqs.org/patents/app/20120011204#ixzz1lzrcgzLU

[0001] This application claims the benefit of priority to U.S. Provisional Application Ser. No. 61/363,081 filed Jul. 9, 2010, which application is incorporated by reference herein in its entirety.  This application also claims the benefit of priority to U.S. Provisional Application Ser. No. 61/494,388 filed Jun. 7, 2011, which application is incorporated by reference herein in its entirety

Claims:

1. A computer implemented method comprising: identifying one or more interactions between a first user and a second user within a social networking system; scoring each respective interaction of the one or more interactions based on a group score and a time penalty, wherein the group score is based on the number of users in the respective interaction and the time penalty is based on a time between a current time and a time of a last interaction between the first user and the second user; determining a relationship ranking that measures an affinity of the first user towards the second user, the relationship ranking comprising the one or more interaction scores; and sending to a client for display an indicator representing the relationship ranking between the first user and the second user. . . .

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17



**Figure 3**

18

19

20   [0032] The user database 318 stores information for one or more users
21   322.  In some embodiments, user database 318 is a distributed database.
     Information for a respective user 322-1 includes content 323, contacts 324,
22   profile information 327, comments 328 and ratings 329, content metadata
     330 and interactions 331.  User profile information 327 stores information
23   such as biographic, demographic and other types of descriptive
     information (work experience, educational history, hobbies or preferences,
24   interests, location, and the like).

25   [0033] Comments 328 stored in the user database 218 include comments
26   by the user as well as comments from other users on content associated
     with the user.  Ratings 329 include the user's rating of content.
27   Interactions 331 stores information about the user's interactions which
     includes a time of the interaction, the identifiers of other users involved in
28   the interaction, the type of the interaction and weights associated with the

interaction. The content 323 includes images, video, audio associated with the user. The content may be captured by the user or another user. The content metadata 330 includes descriptions or categories of content, tags of users and geographic location information. For example, the user may apply a category of "places" to a picture depicting a landmark.

### 4. "This is currently the industry's best practice": Mea Culpa?

44. Path's CEO Morin's initial response to the public outrage over Path's activities was non-responsive. Rather than owning up to Path's misconduct and taking responsibility that Path violated its terms of use and users' trust, his response concerned an attempt to justify Path's activities:

> This is currently the industry best practice and the App Store guidelines do not specifically discuss contact information. However, as mentioned, we believe users need further transparency on how this works, so we've been proactively addressing this.

Jon Mitchell, "The Price of Free: Path Uploads Entire Address Book To Its Servers,'" February 7, 2012, online: http://www.readwriteweb.com/archives/path_is_a_free_app_and_it_will_spy_on_us.php.

45. Path's response was also without merit upon review of Apple's app store guidelines: Path is an "Apple Developer" that agreed to the iOS Developer Agreement ("IDA") and the Program License Agreement ("PLA"). The IDA includes the following restrictions:

> 17.1: Apps cannot transmit data about a user without obtaining the user's prior permission and providing the user with access to information about how and where the data will be used
>
> 17.2: Apps that require users to share personal information, such as email address and date of birth, in order to function will be rejected

46. The PLA provides additional obligations on third-party developers:

> 3.3.9. You and Your Applications may not collect user or device data without prior user consent, and then only to provide a service or function that is directly relevant to the use of the Application, or to serve advertising. You may not use analytics software in Your Application to collect and send device data to a third party.
>
> 3.3.10. You must provide clear and complete information to users regarding Your collection, use and disclosure of user or device data. Furthermore, You must take appropriate steps to protect such data from unauthorized use, disclosure or access by third parties. If a user ceases to consent or affirmatively revokes consent for Your collection, use or

disclosure of his or her user or device data, You must promptly cease all such use.

Letter from Catherine A. Novelli, Vice President, Worldwide Government Affairs of Apple Inc., to Congressmen Waxman and Butterfield (last accessed March 18, 2012), online at: http://democrats.energycommerce.house.gov/sites/default/files/documents/Letter_CookResponse _03.02.12.pdf.

47.    Path's second attempt to diminish its public relations nightmare involved an attempt to provide a "Mea Culpa" of sorts, but then informed all users of its intent to continue to retain and store the unauthorized data in bulk:

> We are sorry.
>
> We made a mistake. Over the last couple of days users brought to light an issue concerning how we handle your personal information on Path, specifically the transmission and storage of your phone contacts.
>
> As our mission is to build the world's first personal network, a trusted place for you to journal and share life with close friends and family, we take the storage and transmission of your personal information very, very seriously.
>
> Through the feedback we've received from all of you, we now understand that the way we had designed our 'Add Friends' feature was wrong. We are deeply sorry if you were uncomfortable with how our application used your phone contacts.
>
> In the interest of complete transparency we want to clarify that the use of this information is limited to improving the quality of friend suggestions when you use the 'Add Friends' feature and to notify you when one of your contacts joins Path—nothing else. We always transmit this and any other information you share on Path to our servers over an encrypted connection. It is also stored securely on our servers using industry standard firewall technology.
>
> We believe you should have control when it comes to sharing your personal information. We also believe that actions speak louder than words. So, as a clear signal of our commitment to your privacy, we've deleted the entire collection of user uploaded contact information from our servers. Your trust matters to us and we want you to feel completely in control of your information on Path.
>
> In Path 2.0.6, released to the App Store today, you are prompted to opt in or out of sharing your phone's contacts with our servers in order to find your friends and family on Path. If you accept and later decide you would like to revoke this access, please send an email to service@path.com and we will promptly see to it that your contact information is removed.

We care deeply about your privacy and about creating a trusted place for you to share life with your close friends and family. As we continue to expand and grow we will make some mistakes along the way. We commit to you that we will continue to be transparent and always serve you, our users, first.

We hope this update clears up any confusion. You can find Path 2.0.6 in the App Store here.

Sincerely,
Dave Morin
Co-Founder and CEO

Path.com, "We are Sorry," (last accessed March 18, 2012), online at: http://blog.path.com/post/17274932484/we-are-sorry.

48.    Path's third attempt to remedy complaints related to a rebuttal of an interview by its CEO in November 2010 in which he stated Path would not retain or store users' data:

[Gawker: Is it correct that Path uses iPhone address book data? Thanks for any guidance!] . . .

**Path does not retain or store any of your information in any way.**

That help?

Dave

[Emphasis added.] . . .

[Update from Dave Morin]: Our email exchange from November 15, 2010 was absolutely accurate. That was the day Path launched and we were not storing any address book information at that time, as I clearly stated in my email. We introduced FriendRank in March 2011 and that is when we began retaining contact information with the intent to maximize the Path experience, specifically by:
1)  showing users a list of friends on Path
2)  suggesting friends users might want to connect to
3)  telling users when any of their contacts joined Path

Dave Morin, Co-Founder and CEO of Path

"Don't Forgive Path, the Creepy iPhone Company that Misled Us Once Already," (last accessed March 18, 2012), online: http://gawker.com/5883549/dont-forgive-path-the-creepy-iphone-company-that-misled-us-once-already.

49.    Path's claim that retaining contact information was necessary in order to "maximize" the Path user's experience reeked of Silicon Valley marketing rhetoric, in that

1  stating it was actually necessary to keep user data after the user has found their friends on the

2  Path App was false and misleading, since a hashing-enabled App could delete all the uploaded

3  hashed data, and still allow the "friend-finding" process to work.

4          50.    Path's claim that its interest was only to assist its users to locate friends within its

5  App and that this benefited only its users and was not a "prodding" mechanism was also false

6  and misleading:

> Consumer complaints: Path (company/product): When you add a
> photo on Path, does Path send email notifications to friends that
> you aren't sharing your Path with? I added a photo to Path
> recently, and at least one Facebook friend, who I wasn't sharing my
> Path with at the time, got an email saying "Richard sent you a
> photo using Path" (this language is somewhat misleading as I
> hadn't taken any action in relation to this person on Path, and they
> weren't relevant to the photo in any way).

Quora, "Path (company/product)," (last accessed March 18, 2012), online:
http://www.quora.com/Path-company-product/When-you-add-a-photo-on-Path-does-Path-send-email-notifications-to-friends-that-you-arent-sharing-your-Path-with.

14          51.    Path's storage of user data was vital to its immediate and continued growth, since

15  it did not want to delay building its platform slowly while prospective users spent time locating

16  the App, experimenting with its functions to determine if they would remain a user, and

17  prompting its users to assist in referring users' contacts. Path's self-imposed limitation of users'

18  friends, initially to fifty and then to one hundred and fifty, was a ploy to limit the upload and

19  storage of unprofitable user content and to limit server costs. Path wanted the ability to create a

20  database of the users' data by interception and monitoring of Interactions between users'

21  contacts while in online social networks. If Path was successful, it would allow it to eventually

22  drop its connection to these underlying social networks. In the meantime, Path would avoid the

23  limitations involved with the mobile App ecosystem and monetize the existing platform of online

24  social networks.

25          52.    Path's business plan concentrated on exponential growth, relying on the data

26  derived from the interactions between the users and their contacts, and not exclusively from user-

27  only data. By calculating and pruning its users' interactions with their contacts on multiple

1   online platforms, it allowed Path to preserve its own platforms and servers. This core

2   infrastructure of Path's mobile platform derived from the Facebook Platform and Facebook

3   Connect concepts, both co-invented by Path CEO David Morin.

4       53.     The limitation of users initially to fifty and then to one hundred and fifty may

5   have been marketed to promote the App as being meant for close connections, but in actuality it

6   allowed Path to limit the cost to develop its own platform, and to use existing platforms, such as

7   Facebook, which had almost a billion users. Following principles similar to those known as

8   "Metcalfe's Law," a principle that states that a network's value is proportional to the square of

9   the number of connected users of the system, Path's intent was exponential growth using its

10  users' contacts. Path reports it now has in excess of 2 million users. Such a database of actual

11  users could then potentially produce a source of a few hundred prospective contacts for each

12  user, then leading to a user base of hundreds of millions of users, rivaling the largest social

13  networks. By amassing data derived from users' contacts, and not just users, Defendant's

14  unauthorized data collection practices allowed immediate growth.

15      54.     Path's fourth attempt to repel criticism related to deleting all data obtained that

16  resided on Path's servers:

17              We've deleted the entire collection of user contact information from our
                servers. . . . Unlike some other companies, we believe that users should
18              have complete control over their data. This is just the right thing to do.

19  Jon Mitchell, "Path CEO: 'We Thought We Were Doing This Right,'" February 8, 2012,
20  online at: http://www.wired.com/gadgetlab/2012/02/path-dave-morin-explains-data/.

21      55.     While Path's attempts to justify its activities failed, its responses were also

22  without merit. Path's provisional application, "System and Method for Social Interaction with

23  Geolocation and Automated Aging and Pruning of Interactions and Contacts," revealed its actual

24  intent related to user contact address data collection, retention and storage four months before the

25  Gawker interview and subsequent rebuttal. Path CEO Morin's attempts to justify Path's

26  activities, attempting to parse the meaning of "privacy," was more of a set of rejoinders of

27  varying degrees of flippancy and superciliousness:

28          •       "We don't want to connect you with just anyone on Path."

- "We used the data for the sake of simplicity."

- "The problem is that the word privacy means so many things. We all have different ideas, there is no real standard."

## 5. Digital Content "Filter Cookies" Now Require Removal

56.     Defendant Path has deposited tracking mechanisms hidden within Plaintiff's and Class Members' digital content, which was then downloaded within their Mobile Devices' and computing devices' memory, as well as in the memory of any party's Mobile Device that received Plaintiff's and Class Members' digital content. Like a toxic oil spill in the Gulf of Mexico causing loss and damage to the area residents, embedded "toxic filter cookies" now require a "toxic filter cookie cleanup."

57.     Prior to the emergence of mobile Apps, online tracking involved using cookies implanted within the digital content on websites. Once the individual viewed the digital content, their computer became a "host" to carry the tracking mechanism across platforms. Defendant sought to carry out the same plan using Mobile Devices.

58.     Digital content, such as photos, include Exchangeable Image File Format ("EXIF") data, a metadata recorded within digital photos in a separate portion of an image file than the visual, photographic data. As such, it can't be seen or detected by a user viewing the image. Removal of such metadata requires special software and skill to extract and display such fields to determine if they are harmful. Access to EXIF requires a third-party program or browser plug-in to uncover the metadata. Such programs include Opanda's IEXIF applications, which can display various photo metadata (including GPS coordinates).

59.     Some Mobile Devices tag videos and photos with metadata about the device and its settings. Recently, geo-location tags have been added to that data, either embedded automatically by Mobile Device manufacturers or through Apps. Companies are now claiming their App will "filter" photos as a service, but the "filtering" process is actually deceiving, since it will add GPS data automatically to a photo. The embedded metadata contains the precise longitude and latitude of the mobile device when the photo was taken. Called "geo-tagging," this relatively recent phenomenon uses GPS technology in certain Mobile Devices with cameras

1   to add hidden map coordinates to digital photographs, videos, and other media.  The metadata

2   with geo-tags and location-identifying data is within the files when they are then uploaded by

3   users.

4          60.    Path's installation of GPS coordinates within Plaintiff's and Class Members'

5   digital content, such as photos, was without notice or authorization.  In order to view such

6   activity, a user could take a photo with a Mobile Device's camera and then download and

7   activate a software program, such as the one located at the site http://opanda.com/en/iexif/, which

8   displays the image taken from the Opanda Software Application with every item of EXIF data in

9   the image from beginning to end.

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24

25

26          61.    As revealed above, the Mobile Device's camera did not add the GPS coordinates.

27  However, duplicating this process while on the Path App revealed otherwise:

28

Opanda PowerExif – photo (9).JPG

New  Open  Save  Save as  Remove Exif   Import  Export  Batch Process   Help  About  Register

Path: C:\Users\Office\Downloads
Filename: photo (9).JPG
Dimensions: 956 x 1280, 72dpi
File Size: 267000 byte
Create Time: 2012-03-14 12:30:35
Write Time: 2012-03-14 12:30:35

| | Meaning | Tag | 16/10 | Exif Name | Type | Count | Byte Si... | Extend |
|---|---|---|---|---|---|---|---|---|
| **Image** | | | | | | | | |
| Orientation | top-left | 0112 | 274 | Orientation | SHORT | 1 | 2 | |
| X Resolution | 72 | 011A | 282 | XResolution | RATIONAL | 1 | 8 | |
| Y Resolution | 72 | 011B | 283 | YResolution | RATIONAL | 1 | 8 | |
| Resolution Unit | Inch | 0128 | 296 | ResolutionUnit | SHORT | 1 | 2 | |
| YCbCr Position... | centered | 0213 | 531 | YCbCrPositioning | SHORT | 1 | 2 | |
| Exif IFD Pointer | Offset 114 | 8769 | 34665 | ExifIFDPointer | LONG | 1 | 4 | |
| GPS Info IFD... | Offset 268 | 8825 | 34853 | GPSInfoIFDPoin | LONG | 1 | 4 | |
| **Camera** | | | | | | | | |
| Exif Version | Version 2.21 | 9000 | 36864 | ExifVersion | UNDEFIN... | 4 | 4 | |
| Date Time Orig... | 2012-03-14 12:01:43 | 9003 | 36867 | DateTimeOriginal | ASCII | 20 | 20 | |
| Date Time Digit... | 2012-03-14 12:01:43 | 9004 | 36868 | DateTimeDigiti... | ASCII | 20 | 20 | |
| Components C... | YCbCr | 9101 | 37121 | ComponentsCo... | UNDEFIN... | 4 | 4 | |
| Flashpix Version | Version 1.0 | A000 | 40960 | FlashpixVersion | UNDEFIN... | 4 | 4 | |
| Color Space | sRGB | A001 | 40961 | ColorSpace | SHORT | 1 | 2 | |
| Exif Image Width | 1280 | A002 | 40962 | ExifImageWidth | LONG | 1 | 4 | |
| Exif Image Hei... | 956 | A003 | 40963 | ExifImageHeight | LONG | 1 | 4 | |
| Scene Capture ... | Normal | A406 | 41990 | SceneCapture... | SHORT | 1 | 2 | |
| **GPS** | | | | | | | | |
| GPS Latitude Ref | North latitude | 0001 | 1 | GPSLatitudeRef | ASCII | 2 | 2 | |
| GPS Latitude | 32°45.39' | 0002 | 2 | GPSLatitude | RATIONAL | 3 | 24 | |
| GPS Longitude... | West longitude | 0003 | 3 | GPSLongitudeR... | ASCII | 2 | 2 | |
| GPS Longitude | 96°49.39' | 0004 | 4 | GPSLongitude | RATIONAL | 3 | 24 | |
| GPS Altitude Ref | Sea level | 0005 | 5 | GPSAltitudeRef | BYTE | 1 | 1 | |
| GPS Altitude | 144.4214m | 0006 | 6 | GPSAltitude | RATIONAL | 1 | 8 | |
| GPS Time Sta... | 17:01:30 14 UTC | 0007 | 7 | GPSTimeStamp | RATIONAL | 3 | 24 | |
| **Thumbnail Info** | | | | | | | | |
| Compression | JPEG Compressed (Thum... | 0103 | 259 | Compression | SHORT | 1 | 2 | |
| X Resolution | 72 | 011A | 282 | XResolution | RATIONAL | 1 | 8 | |
| Y Resolution | 72 | 011B | 283 | YResolution | RATIONAL | 1 | 8 | |
| Resolution Unit | Inch | 0128 | 296 | ResolutionUnit | SHORT | 1 | 2 | |
| JPEG Interchan... | Offset 532 | 0201 | 513 | JPEGInterchang... | LONG | 1 | 4 | |
| JPEG Interchan... | Length 6895 | 0202 | 514 | JPEGInterchang... | LONG | 1 | 4 | |
| **Thumbnail** | | | | | | | | |
| Thumbnail | 120 x 160 | 0001 | 1 | Thumbnail | UNDEFIN... | *57616 | 57616 | |

Photographer  Editor  GPS  Show All                         ByteOrder: Motorola

62.    The purpose for Path's addition for the GPS as a tracking mechanism was revealed in its provisional patent application:

•      The method in claim 24, further comprising storing the captured content as at least one photographic image, with a stored place geographic location, and at least one opinion or rating about the item represented by the captured content and location.

•      The method in claim 41, wherein the digital content is selected from one of or any combination of a still photo image content, a video content, and an audio content.

•      A system for capturing digital content in a social network, the system comprising: a client device having a processor and a memory coupled with the processor configured for receiving a first request from a first user to capture or acquire a first digital content item into the client device; a capture device controlled by the processor for capturing the first digital content into a memory storage of the client device in response to a capture command; a query engine coupled with the processor configured to generate a first query requesting an input as to whether additional information or data is now to be attached to or associated with the captured or acquired content.

63.    Plaintiff's and Class Members' photos (as well as videos and audio files) are

1  personal property that cannot be replicated. Plaintiff and Class Members cannot delete the

2  tracking mechanism now contained within the photos merely by selecting a browser cleaner like

3  that used to clean cookies. Complicating the cleaning process is the fact that all of Plaintiff's and

4  Class Members' photos stored within their Mobile Devices' and computing devices' memory

5  include photos not uploaded within the Path App, thus each photo shall need to be examined.

6  Plaintiff and Class Members demand that Defendant return the digital content within their

7  Mobile Devices and computing devices to the state that existed prior to any and all activity

8  implemented by Defendant Path and Path Affiliates, including but not limited to removal of all

9  GPS coordinates attached to their digital content. Such a demand is premised on the fact that

10  although Defendant has claimed it has ceased obtaining its users' contact address data without

11  authorization, the tracking data still exists on Plaintiff's and Class Members' Mobile Devices and

12  computing devices until removed. Without reviewing the code, or visiting the site on a fresh

13  computing device and seeing what filter cookies were set within digital content to determine

14  what activity persists, Plaintiff's and Class Members' Mobile Devices and computing devices are

15  at risk, and Plaintiff and Class Members do not desire to accept such a risk.

16      64.    Defendant's actions have caused harm to the Plaintiff and Class Members,

17  including, but not limited to, loss due to costs associated with Mobile Device and computing

18  device forensics to investigate, locate, and delete any and all filter cookie tracking mechanisms

19  located within Plaintiff's and Class Members' Mobile Devices and computing devices.

20      65.    Plaintiff and Class Members use their Mobile Devices' and computing devices'

21  memory to store and use digital content. Plaintiff and Class Members do not want to use the

22  Mobile Devices' and computing devices' software to delete their entire memory; rather only that

23  data within their hardware associated with Defendant Path and Path Affiliates. The task requires

24  accessing the Plaintiff's and Class Members' hard drives to examine each and every data file of

25  digital content.

26      66.    Cleaning software provides the cache deletion mechanisms which delete the cache

27  of browsers. This purges all values. The cost for cleaning is quite low if a user merely runs the

28  cache deletion of all browsers; however, digital content is also stored within the Mobile Devices'

1  and computing devices' memory.

2      67.     Plaintiff's and Class Members' concerns also relate to data remanence, or the

3  residual representation of data that remains even after attempts have been made to remove or

4  erase the data.  This residue may result from data being left intact by a nominal file deletion

5  operation, by reformatting of storage media that does not remove data previously written to the

6  media, or through physical properties of the storage medium that allow previously written data to

7  be recovered.

8      68.     It is a misconception about deleting digital files that by simply pressing the delete

9  button, emptying the "Recycle Bin," or even formatting the drive that it deletes all files.

10  Information still remains on the hard disk drive.  Formatting a hard drive also does not erase

11  hidden files.  The data is not permanently erased, and formatting still leaves unused parts of the

12  hard drive and the swap file holding data.

13      69.     When information is written to a drive, the location of the information is stored in

14  a file that resembles a table of contents for a book.  For example, on devices running DOS and

15  Windows operating systems, the File Allocation Table ("FAT") or the Master File Table

16  ("MFT") holds this information.  When a file is deleted, the FAT or MFT table is updated to tell

17  the computer the space on the hard drive is available.  However, the actual data is not deleted

18  until it is overwritten with new data.  This is the reason why computer forensic software is able

19  to recover data.  Using software undelete tools, files that were accidentally or otherwise deleted

20  can be restored.

21      70.     The U.S. Department of Defense 5220.22-M standard for disk-sanitization is the

22  most rigorous data wipe procedure.  This wiping standard requires seven passes, with each pass

23  comprised of three different data wipes.  The hard drive is rewritten and covered with random

24  patterns.  With each wipe, the deleted data becomes harder to piece back together.

25      71.     The most effective and efficient way to clean a Mobile Device or computing

26  device would be to indiscriminately erase ALL tracking files on the device, which would include

27  cookies, flash cookies, HTML5 storage, and other tracking files.  To go through and erase solely

28  the Path-related files would take extra time and would bear the risk of not eliminating all of the

1  potential threats.  Plaintiff and Class Members desire to have their Mobile Devices and

2  computing devices restored to the state in which the hardware existed before Defendant's

3  activities, without deleting any of their cache data.

4          72.    Plaintiff and Class Members have suffered loss and damages in order to mitigate

5  Defendant's invasive actions, by expending time, money, and resources to investigate and repair

6  their Mobile Devices and computing devices, a process requiring the examination of all digital

7  content uploaded to Defendant's Path App.

8          73.    Plaintiff's and Class Members' economic loss involves costs to obtain a complete

9  forensic examination of their Mobile Devices and computing devices.  Estimates for such

10 services can exceed thirty-five hours at a cost of $350 per hour, or a total cost of $12,250 per

11 device:

> "A complete examination of a single 80 GB hard drive can have over
> 18,000,000 pages of electronic information and may take between 15 to 35
> hours or more to examine, depending on the size and types of media.  A
> reasonable quote can be obtained prior to the investigation's start. This
> time could increase or decrease, depending upon the type operating system
> used, the type of data contained within, and the size and amount of data in
> question.  Computer forensic investigations have an unusually high return
> on investment.  The total computer forensic price can average from $250
> to $350 an hour."

New York Computer Forensics Services, "Computer Forensics Frequently Asked Questions"
(last accessed March 19, 2012), online:
http://www.newyorkcomputerforensics.com/learn/forensics_faq.php

20         74.    The costs of Mobile Devices with App capabilities generally range from $50 to

21 $850, and computing devices range from $150 to $1,500.  Plaintiff and Class Members use such

22 devices to conduct both personal and commercial business.  Any interference of any kind to such

23 devices would interfere with their personal enjoyment and/or commercial use.  Plaintiff and

24 Class Members were harmed due to any interruption in use once the Defendant's actions became

25 known, interruption due to time to investigate, depletion of resources, and economic harm to

26 repair any loss and damage.

27         75.    When Plaintiff and Class Members purchased Mobile Devices and computing

28 devices, they took into account considerations of costs, speed, and security features.  The cost of

the hardware and software necessary for the security features were factored into the total price of the Mobile Devices and computing devices; thus, a specific sum was allocated to the cost of including the security features. As such, Defendant's circumvention of Plaintiff's and Class Members' Mobile Devices' and computing devices' security features rendered such hardware and software protections purchased with the Mobile Device worthless.

76.    Defendant's harm to Plaintiff and Class Members involves a loss which includes the purchase of a hard drive, transferring of files, and re-installation of an operating system. Hidden files on a hard drive actually store data long after deleted and can be recovered by experts. As an alternative to clearing all cache and cookies, a user would need to purchase a brand new hard drive, and have their authorized data from the hard drive transferred to a new hard drive. A retail price for this would average $100 for the hard drive and approximately $149-$249 for the operation of transferring the files, installing the operating system, etc., or about $300-$350 total would be a market retail price.

77.    Defendant's harm to Plaintiff and Class Members involves paying a technician to spend hours and hours reading every single cookie file, cache file, etc. A technician could spend approximately ten to twenty hours going through each and every cookie file. If a computer has 18,000,000 cookies, it would take a substantial time on a device that has a lot of tracking files to view each one individually. A technician shall have to indiscriminately read every line of every file of cache and analyze it, and delete Defendant's tracking files.

78.    Plaintiff and Class Members who have their hard drive/cache removed, but want to still use the infected hard drive must extract all the authorized data, and that would require additional costs for that process. Data transfer could be as much as $250. Plaintiff and Class Members must purchase a brand new hard drive and all of their data (music, documents, etc.) and transfer such to the new hard drive. Plaintiff's and Class Members' loss includes a cost of about $350 for the hard drive and the service. Most technicians will not re-install all of the programs for the user. It would be plausible to say that re-installing an average user's applications would take another three to four hours, and thus cost an extra $400. Market costs to buy a new hard drive and have all of a user's programs and files transferred to it, so that they

1 | were made whole and in the same shape that they were in before, would cost around $750.

2 | 79.    The issue is not that the cost is higher to delete the hidden files than the cost of a

3 | total replacement i.e. buying a brand new device. The issue is that a person's digital content, like

4 | photos, is invaluable to them. Individuals have years' worth of digital content on their Mobile

5 | Device and computer device hard drives. Thus, user data is invaluable if lost.

6 | **6. Defendant's Harmful Practices**

7 | 80.    Defendant's business practices unfairly wrest control from Plaintiff and Class

8 | Members who choose to block and delete any mobile tracking device on their Mobile Devices in

9 | order to avoid being tracked. Plaintiff and Class Members who are aware of being tracked may

10 | attempt to delete any and all tracking devices periodically, believing that this will eliminate the

11 | tracking functions and hinder the ability to track their behavior across sites and Apps. However,

12 | this is not the case. Path's activities, individually and in concert with third parties including Path

13 | Affiliates, override this attempt, with little available redress for users.

14 | 81.    Defendant failed to disclose that it applied technologies to surreptitiously

15 | intercept, access, and collect electronic communications and information from an unsuspecting

16 | Plaintiff and the Class Members, nor its tracking of Plaintiff's and Class Members' Interactions

17 | with individuals within their contact address book, thereby obtaining PII, monitoring their

18 | internet activity, and creating detailed personal profiles based on such information.

19 | 82.    Defendant intercepted Plaintiff's and Class Members' electronic communications

20 | for the purpose of committing a tortious or criminal act, and violated the rights of Plaintiff and

21 | Class Members.

22 | 83.    Defendant intentionally accessed data, derived in whole or part, from Plaintiff's

23 | and Class Members' Mobile Devices without authorization or exceeded authorized access to

24 | obtain information from a protected Mobile Device transmitting interstate electronic

25 | communications.

26 | 84.    At all relevant times, Plaintiff's and Class Members' personal and private

27 | information was electronically intercepted, accessed by, and transmitted to Defendant on a

28 | regular basis, without alerting Plaintiff and Class Members in any manner. As a result,

1  Defendant was able to and did obtain data derived in whole or part from Plaintiff's and Class

2  Members' Mobile Devices and intercepted their electronic communications without

3  authorization. Defendant has obtained, compiled, and used this personal information for its own

4  commercial purposes and benefit.

5      85.    Defendant intercepted Plaintiff's and Class Members' electronic communications

6  for the purposes of obtaining Mobile Device data, by repeatedly accessing electronic

7  communications without Plaintiff's and Class Members' knowledge and consent, to profile,

8  secretly track their activities on the Internet, collect personal information about Plaintiff and

9  Class Members, and profit from the use of the illegally obtained information, all to Defendant's

10  benefit and Plaintiff's and Class Members' detriment.

11     86.    Defendant intentionally intercepted, endeavored to intercept, or procured other

12  entities to intercept or endeavor to intercept the electronic communication of Plaintiff and Class

13  Members.

14     87.    Defendant has, either directly or by aiding, abetting and/or conspiring to do so,

15  knowingly, recklessly, or negligently disclosed, exploited, misappropriated and/or engaged in

16  widespread commercial usage of Plaintiff's and the Class Members' Mobile Device data, and

17  obtained private and sensitive information for Defendant's own benefit without Plaintiff's or the

18  Class Members' knowledge, authorization, or consent. Such conduct constitutes a highly

19  offensive and dangerous invasion of Plaintiff's and the Class Members' privacy. Defendant's

20  activity was not readily evident.

21     88.    Plaintiff and Class Members were personally injured, as that term is recognized

22  within the cyber and technology industry, when Defendant intentionally, or in the alternative,

23  negligently, obtained, processed, and disseminated content, obtained without authorization, and

24  invaded Plaintiff's and Class Members' rights of privacy, and  portrayed Plaintiff and Class

25  Members in a false light by publicly disclosing private facts through their intrusion into the

26  Plaintiff's and Class Members' personal contacts and mobile browsing activity.

27     89.    Plaintiff and Class Members expended money, time, and resources investigating

28  and attempting to mitigate their Mobile Devices' and computing devices' diminished

1    performance, in addition to investigating and attempting to remove the Defendant's tracking

2    mechanisms. Plaintiff and Class Members must now conduct a damage assessment to attempt to

3    restore any affected data, program, system, or information, thus incurring substantial out of

4    pocket costs.

5        90.    Defendant's conduct caused outrage, mental suffering, and harm to Plaintiff's and

6    Class Members' privacy expectations.

7        91.    Defendant intentionally disposed of the Plaintiff's and Class Members' property

8    by using and intermeddling with their Mobile Devices so as to impair their condition, quality,

9    and value, thus preventing the Plaintiff and Class Members from using their Mobile Devices as

10   desired for a substantial time.

11       92.    Defendant's activities occurred throughout the United States. Defendant secretly

12   obtained personal and private information from Plaintiff and the Class Members - a course of

13   action proscribed by federal law and a body of information that is protected from interception,

14   access, and disclosure by federal law.

15       93.    Defendant failed to disclose to Path's users that conduct with their contacts would

16   be monitored and used to track and store information regarding consumers' Internet use. The

17   installation of such tracking devices would be material to consumers in their decision whether to

18   install the Path App offered by Defendant.

19       94.    Without remedy, Plaintiff and Class Members will continue to be tracked by

20   dozens of companies including Path Affiliates — companies they've never heard of, companies

21   they have no relationship with, companies they would never choose to trust with their most

22   private thoughts and habits.

23       95.    The collection, use, and disclosure of tracking data, such as obtaining a users'

24   contact address data and tracking location information for retention by Defendant to provide its

25   services, implicates Plaintiff's and Class Members' privacy and physical safety. Such

26   information should be afforded special attention due to the consequences for both privacy and

27   physical safety that may flow from its disclosure. The heightened privacy and physical safety

28   concerns generated by the collection, use, and disclosure of location information are apparent in

1  U.S. law that creates restrictive consent standards for its use and disclosure in the private sector

2  in the context of telecommunications services.

3      96.    The tracking and monitoring of Mobile Device users' contacts will have a

4  negative effect on individuals' access to information. The anonymity that the Internet affords

5  individuals has made it an incredible resource for those seeking out information, particularly

6  where the information sought is on controversial topics such as sex, sexuality, or health issues

7  such as HIV, depression, and abortion. The ability to access information without risking

8  identification has been critical.

9      97.    Individuals who signed up for Path's service by downloading the Path App are

10  now obligated to go request that Defendant remove their data from Path's servers. Individuals

11  who never signed up with Path's services but merely associate with a Path user such that their

12  contact information is in the user's contact address book will have no notice of the Defendant's

13  actions so as to request Defendant to terminate the storage of their personal information.

14      98.    Defendant was not authorized to have free access to sensitive user data like

15  contact information for purposes unrelated to the claimed purpose to initially review the data of

16  assisting in "finding friends," and failed to have an affirmative opt-in process that explained

17  what Path data will be collected.

18      99.    Plaintiff and Class Members own or have custody and control of their Mobile

19  Devices, computing devices, networks, programs, and personal and proprietary data, including

20  the contents of their contact address books accessed, copied, utilized, and disrupted by Defendant

21  without, and in a manner exceeding, Plaintiff's and the Class Members' permission and

22  authority.

23      100.    Defendant's activities alleged above constituted a knowing and intentional

24  scheme to defraud Plaintiff and the Class Members, and to wrongfully access and retain

25  Plaintiff's and Class Member's property and data, including the use of their contact address

26  book, which are assets with marketable commercial value.

27      101.    Defendant's claim that it has deleted all Plaintiff's and Class Members' contact

28  address data is unlikely, based on information and belief, unless Path deletes its entire database

1 of all data. Plaintiff's and Class Members' digital content containing installed GPS tracking

2 mechanisms remains in Path's computing devices' memory, and any individual who received

3 such digital content now possesses such tracking mechanisms within their computing device's

4 memory as well. This is even more likely since all of Path's data includes data involving the

5 "interactions" between Plaintiff's and Class Members' contacts. All such data needs deletion.

6      102.    In the course of committing the acts described above, Defendant intentionally

7 accessed, without authorization, facilities through which electronic communication services are

8 provided, including Plaintiff's and Class Members' contact address books. In so doing,

9 Defendant intentionally exceeds access authorization, obtaining and storing proprietary data,

10 including Plaintiff's and Class Members' contact address books.

11      103.    Harms and damages to Plaintiff and the Class Members during the period set forth

12 in the factual allegations herein and continuing to the present include the costs of lost personal

13 and business time investigating and rectifying the consequences of Defendant's conduct in

14 harvesting Plaintiff's and Class Members' communications, including their contact address

15 books and online social network Interactions.

16      104.    Further, through its practices, Defendant Path has been able to raise its profile as

17 an App with many members and high levels of member traffic, enabling Path to attract

18 advertisers, increase its prospective advertising revenue, and secure investment funding, and

19 thereby profit from the conduct described herein.

20      105.    Not only was Plaintiff's and Class Members' PII transmitted to Path and third

21 parties, but all of Plaintiff's and Class Members' contact address data was transmitted "in the

22 clear" (sometimes referred to as "plain text"); that is, without encryption. As Path has

23 acknowledged, it could have generated a "hash" of the e-mail addresses to provide a unique

24 identifier. This would have allowed the matches necessary for "friend finding," while being

25 incapable of being converted back into the original address. However, the subsequent issue is

26 whether or not Path hashed the contact address book data it gathered before deleting it all.

27 According to the National Institute for Standards and Technology ("NIST"), "Mobile devices

28 have a broad attack surface including Bluetooth, Wi-Fi, and cellular communications interfaces

1  as well as protocols for Web transactions," and "[s]ensitive data should be encrypted during data

2  transmission and when stored on the device or in external memory cards." Wayne Jansen &

3  Karen Scarfone, Recommendations of the National Institute of Standards and Technology:

4  Guidelines on Cell Phone and PDA Security, U.S. Dept. of Commerce, NIST, SP 800-124 at 3-2

5  (Oct. 2008).

6      106.    Path's transmission of user data "in the clear," was substandard in light of

7  reasonably accepted security measures, exposing Plaintiff and Class Members to unreasonable

8  risks of the interception of their personal information that are well understood to be associated

9  with such poorly secured transmission. Such unsecured transmissions were particularly

10  inappropriate given the nature of Mobile Devices and Apps through which such information was

11  transmitted.

12      107.    Path has represented to Plaintiff and Class Members, expressly or by implication,

13  that Path takes precautions — including administrative, technical, and physical measures — to

14  safeguard users' personal information against loss, theft, and misuse, as well as against

15  unauthorized access, disclosure, alteration, and destruction.

16      108.    As with any form of property, Plaintiff and Class Members, as the owners, should

17  be compensated for the use and exploitation thereof, and if they are not, they suffer concrete,

18  measurable damage and injury, the exact amount of which shall be proved through expert

19  opinion.

20      109.    In addition to the harms alleged above, Defendant's unauthorized, surreptitious

21  collection of Plaintiff's and Class Members' information subjected Plaintiff and Class Members

22  to harm because the Defendant's actions consumed and utilized power resources to which

23  Plaintiff and Class Members had the right of control and use.

24      110.    Defendant caused harm and damages to Plaintiff's and Class Members' Mobile

25  Devices' finite resources, by depleting and exhausting the Mobile Devices' memory, thus

26  causing an actual inability to use them for their intended purposes. Defendant caused significant

27  unwanted device activity, usage, and network traffic, resulting in instability issues.

28      111.    Defendant caused harm and damages to the Plaintiff and Class Members

1    including, but not limited to, consumption of their Mobile Devices' finite resources, memory,

2    and bandwidth, which resulted in the actual inability to use them for their intended purposes.

3        112.    The personal and private information intercepted is of extreme interest to many

4    advertising networks and web analytics companies, including the Path Affiliates.  For this

5    reason, these third parties pay to support App development, so that many Apps are provided to

6    consumers ostensibly "free" or at a lower cost.

7        113.    When users download and install Path's App on their Mobile Devices, the

8    Defendant's software accesses personal information on those devices without users' awareness

9    or permission and transmits the information to third parties, supplying them with details such as

10    consumers' cellphone numbers, address books, Unique Device Identifier ("UDID"), and geo-

11    location histories — highly personal details about who the consumers are, who they know, what

12    they do, and where they are.

13        114.    As a result, Defendant Path, through its App, and third parties with whom they

14    had entered into relationships, have continued to acquire details about consumers and to track

15    consumers on an ongoing basis, across numerous Apps, and tracked consumers when they

16    accessed the Path App from different Mobile Devices and computing devices.

17        115.    Defendant acquired personal information and compiled profiles that were

18    unnecessary to the App's stated functions, but were useful to the Defendant in its commercial

19    compilation, use, and sale of consumers' personal information.

20        116.    Plaintiff did not consent for his personally identifiable information to be shared

21    with and used on behalf of the Defendant and third parties.

22        117.    The Defendant's actions were without users' knowledge and carried out

23    surreptitiously, and so were conducted without authorization and exceeding authorization.

24        118.    The Defendant collects personal information transmitted from Plaintiff's and

25    Class Members' Mobile Devices for purposes unrelated to the functionality of Plaintiff's and

26    Class Members' Mobile Devices or execution of the Path App on those devices.

27        119.    During the Class Period, Plaintiff and Class Members had personal data collected

28    from their Mobile Devices while using Path.  Such data was identifiable as to Plaintiff and each

1   Class Member and was transmitted to third parties for purposes wholly unrelated to the use and

2   functionality of the Path App.

3       120.   None of the Class Members was made aware of or consented to the taking of this

4   data, and there was no way to opt out of this surreptitious, third-party collection of information.

5   The information collected included, but was not limited to, Plaintiff's and Class Members'

6   contacts' information and the interactions with their contacts.

7       121.   Defendant utilized Plaintiff's and Class Members bandwidth resources, for which

8   Plaintiff and Class Members paid charges to their carriers, and consumed storage space on their

9   Mobile Devices and computing devices, which Plaintiff and Class Members had purchased

10   without expectation of such unauthorized resource use by the Path App.

11       122.   As a result, Plaintiff and Class Members had the resources of their Mobile

12   Devices and computing devices consumed and diminished without their permission.  Such

13   resources were measurable and of actual value, and included Mobile Devices' and computing

14   devices' storage, battery life, and bandwidth from Plaintiff's and Class Members' wireless or

15   online services provider.  The monetary value of the resources taken from Plaintiff and Class

16   Members is quantifiable.  The rate at which battery charge was diminished on the Mobile

17   Devices as a result of the Defendant's actions was material to Plaintiff and Class Members,

18   particularly given the power resource constraints on the Mobile Devices: the Defendant's

19   repeated actions during App executions utilized approximately two to three seconds of battery

20   capacity with each action due to the power requirements of CPU processing, file input and output

21   actions, and Internet connectivity.

22       123.   Not only did Defendant's actions cause Plaintiff's and Class Members' Mobile

23   Devices' batteries to discharge more quickly, rendering the Mobile Devices less useful given

24   power constraints, but the Defendant's repeated actions also resulted in lasting impairment,

25   because by repeatedly utilizing power and causing Plaintiff and Class Members to have to re-

26   charge their computing devices batteries sooner, the Defendant shortened the actual utility and

27   life of the Mobile Devices' batteries, for which charging capabilities are diminished over

28   repeated re-chargings.

124.    Mobile Devices' contact address books reside on the Mobile Devices, and services that utilized the address book data are under control of the user. Path needs to provide notice of any and all of its activities, including but not limited to, location of its servers, use of the users' data, and must also terminate the data.

125.    Quantification of the effect of the Defendant's impairment of the utility of Plaintiff's and Class Members' Mobile Devices' batteries and concomitant diminution in the value of the Mobile Devices and computing devices can be discerned through discovery of Defendant Path and affiliates and expert testimony.

## VII.    CLASS ALLEGATIONS

126.    Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(1), 23(b)(2) and/or 23(b)(3) on behalf of himself and the following Class:

> All persons residing in the United States who possessed a Mobile Device and downloaded the Path Application from November 15, 2010 to the date of Class certification.

127.    Excluded from the Class are Defendant, its legal representatives, assigns, and successors, and any entity in which Defendant has a controlling interest. Also excluded is the judge to whom this case is assigned and the judge's immediate family.

128.    The period from November 15, 2010 to the date of Class certification is referred to herein as the "Class Period."

129.    Plaintiff reserves the right to revise this definition of the Class based on facts he learns as litigation progresses.

130.    The Class consists of thousands, if not millions, of individuals and other entities, making joinder impractical.

131.    The claims of Plaintiff are typical of the claims of all other Class Members.

132.    Plaintiff will fairly and adequately represent the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the Class Members, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interests adverse to those of the other Class Members.

1 133. Absent a class action, most Class Members would find the cost of litigating their

2 claims to be prohibitive and will have no effective remedy. The class treatment of common

3 questions of law and fact is also superior to multiple individual actions or piecemeal litigation in

4 that it conserves the resources of the courts and the litigants, and promotes consistency and

5 efficiency of adjudication.

6 134. Path, Inc. has acted and failed to act on grounds generally applicable to Plaintiff

7 and the other Class Members, requiring the Court's imposition of uniform relief to ensure

8 compatible standards of conduct toward the Class Members.

9 135. The factual and legal bases of Path's liability to Plaintiff and to the other Class

10 Members are the same, resulting in injury to Plaintiff and all of the other Class Members.

11 Plaintiff and the other Class Members have all suffered harm and damages as a result of Path's

12 wrongful conduct.

13 136. There are many questions of law and fact common to Plaintiff and the Class

14 Members, and those questions predominate over any questions that may affect individual Class

15 Members. Common questions for the Class include, but are not limited to the following:

16  a. What was the extent of Defendant's business practice of accessing and
17   storing users' Mobile Device contact address data?

18  b. What information did Defendant collect from its business practice of
   accessing and storing users' Mobile Device contact address data, and what
19   did it do with that information?

20  c. What was the extent of Defendant's tracking of users' interactions with
   contacts on third-party sites and/or networks?
21

22  d. What were the security features Defendant had in place to protect users'
   sensitive information?
23

24  e. whether Path's conduct described herein violates the Electronic
   Communications Privacy Act, 18 U.S.C. § 2510 *et seq.*;

25  f. whether Path's conduct described herein violates California Computer
   Crime Law, Cal. Penal Code § 502;
26

27  g. whether Path's conduct described herein violates California's Invasion Of
   Privacy Act, California Penal Code § 630 *et seq.*;

28

h.   whether Path's conduct described herein violates California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*;

i.   whether Path's conduct described herein violates California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*;

j.   whether Path's conduct described herein violates California's Customer Records Act, Cal. Civ. Code § 1798.80 *et seq.*;

k.   whether Path's conduct has resulted in Invasion of Privacy and Seclusion and Public Disclosure of Private Facts;

l.   whether Path's conduct has resulted in Conversion;

m.   whether Path's conduct has resulted in Trespass to Personal Property/ Chattels; and

n.   whether Path's conduct has resulted in its unjust enrichment.

137.   The questions of law and fact common to Class Members predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

## VIII.   CAUSES OF ACTION

### CAUSE OF ACTION I
### Violations of the Electronic Communications Privacy Act,
### 18 U.S.C. § 2510 *et seq.*

138.   Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

139.   The Electronic Communications Privacy Act of 1986, 18 U.S.C. § 2510 *et seq.*, referred to as the "ECPA," regulates wire, electronic, and oral communications interception, and makes it unlawful for a person to intentionally intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication, within the meaning of 18 U.S.C. § 2511(1).

140.   Defendant violated 18 U.S.C. § 2511 by intentionally intercepting and procuring Plaintiff's and Class Members' electronic communications, without knowledge, consent, or authorization.

141.   At all relevant times, Defendant engaged in business practices of intercepting

1  and procuring Plaintiff's and the Class Members' electronic communications, which included

2  procuring users' contact address books, and intercepting interactions between users and their

3  contacts online from their Mobile Devices.  Once the Defendant obtained the data, it used such

4  to aggregate mobile device data of the Plaintiff and Class Members as they used their Mobile

5  Devices.

6       142.    The contents of data transmissions from and to Plaintiff's and Class Members'

7  Mobile Devices constitute "electronic communications" within the meaning of 18 U.S.C. §

8  2510.

9       143.    Plaintiff and Class Members are "person[s] whose … electronic communication

10 is intercepted, disclosed, or intentionally used in violation of this chapter" within the meaning of

11 18 U.S.C. § 2520.

12      144.    Defendant violated 18 U.S.C. § 2511(1)(c) by intentionally disclosing, or

13 endeavoring to disclose, to any other person the contents of Plaintiff's and Class Members'

14 electronic communications, knowing or having reason to know that the information was

15 obtained through the interception of Plaintiff's and Class Members' electronic communications.

16      145.    Defendant violated 18 U.S.C. § 2511(1)(d) by intentionally using, or

17 endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications,

18 knowing or having reason to know that the information was obtained through the interception of

19 Plaintiff's and Class Members' electronic communications.

20      146.    Defendant's intentional interception of these electronic communications without

21 Plaintiff's or Class Members' knowledge, consent, or authorization was undertaken without a

22 facially valid court order or certification.

23      147.    Defendant intentionally used such electronic communications, with knowledge,

24 or having reason to know, that the electronic communications were obtained through

25 interception, for an unlawful purpose.

26      148.    Defendant unlawfully accessed and used, and voluntarily disclosed, the contents

27 of the intercepted communications to enhance its profitability and revenue through advertising.

28 This disclosure was not necessary for the operation of Defendant's system or to protect

1  Defendant's rights or property.

2      149.    Section 2520(a) provides a civil cause of action to "any person whose wire, oral,

3  or electronic communication is intercepted, disclosed, or intentionally used" in violation of the

4  ECPA.

5      150.    Defendant is liable directly and/or vicariously for this cause of action.  Plaintiff

6  and the Class therefore seek remedies as provided for by 18 U.S.C. § 2520, including such

7  preliminary and other equitable or declaratory relief as may be appropriate, damages consistent

8  with § 2520(c) to be proven at trial, punitive damages to be proven at trial, and a reasonable

9  attorney's fee and other litigation costs reasonably incurred.

10     151.    Plaintiff and the Class, pursuant to 18 U.S.C. §2520, are entitled to preliminary,

11  equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or

12  $100 a day for each day of violation, actual and punitive damages, reasonable attorneys' fees,

13  and Defendant's profits obtained from the above-described violations.  Unless restrained and

14  enjoined, Defendant will continue to commit such acts.  Plaintiff's remedy at law is not

15  adequate to compensate him for these inflicted and threatened injuries, entitling Plaintiff to

16  remedies including injunctive relief as provided by 18 U.S.C. § 2510.

17                          **CAUSE OF ACTION II**
                   **Violations of Cal. Penal Code § 502,**
18           **The California Computer Crime Law ("CCCL")**

19     152.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged

20  herein.

21     153.    Defendant Path violated Cal. Penal Code § 502(c)(2) by knowingly and without

22  permission accessing, taking, and using Plaintiff's and the Class Members' contact address

23  books.

24     154.    Defendant accessed, copied, used, made use of, interfered with, and/or altered,

25  data belonging to Class Members: (1) in and from the State of California; (2) in the home states

26  of the Plaintiff and the Class Members; and (3) in the states in which the servers that stored

27  information obtained from Plaintiff and Class Members and the websites with which they

28  interacted were located.

1      155.    Cal. Penal Code § 502(j) states: "For purposes of bringing a civil or a criminal

2   action under this section, a person who causes, by any means, the access of a computer,

3   computer system, or computer network in one jurisdiction from another jurisdiction is deemed to

4   have personally accessed the computer, computer system, or computer network in each

5   jurisdiction."

6      156.    Defendant has violated California Penal Code § 502(c)(1) by knowingly and

7   without permission altering, accessing, and making use Plaintiff's and Class Members' contact

8   address books on their Mobile Devices, and using the contact information in the contact address

9   books in order to execute a scheme to defraud consumers into registering as Path members, and

10  to wrongfully obtain the data in Plaintiff's and the Class Members' contact address books.

11     157.    Defendant Path violated Cal. Penal Code § 502(c)(2) by knowingly and without

12  permission accessing, taking, and using Plaintiff's and the Class Members' contact address

13  books.

14     158.    Defendant has violated California Penal Code § 502(c)(6) by knowingly and

15  without permission providing, or assisting in providing, a means of accessing Plaintiff's and

16  Class Members' Mobile Devices.

17     159.    Defendant has violated California Penal Code § 502(c)(7) by knowingly and

18  without permission accessing, or causing to be accessed, Plaintiff's and Class Members' Mobile

19  Devices, in particular, their contact address book data.

20     160.    Pursuant to California Penal Code § 502(b)(10), a "'Computer contaminant'

21  means any set of computer instructions that are designed to . . . record, or transmit information

22  within a computer, computer system, or computer network without the intent or permission of

23  the owner of the information."

24     161.    Defendant has violated California Penal Code § 502(c)(8) by knowingly and

25  without permission introducing a computer contaminant into the transactions between Plaintiff

26  and the Class Members and Defendant, specifically, the Path App's contact address book

27  harvesting instructions and tracking mechanisms associated with digital content.

28     162.    As a direct and proximate result of Defendant's unlawful conduct within the

1  meaning of California Penal Code § 502, Defendant has caused loss to Plaintiff and the Class

2  Members in an amount to be proven at trial. Plaintiff and the Class Members are also entitled to

3  recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

4     163.    Plaintiff and the Class Members seek compensatory damages, in an amount to be

5  proven at trial, and injunctive or other equitable relief.

6     164.    Plaintiff and Class Members have suffered irreparable and incalculable harm and

7  injuries from Defendant's violations. The harm will continue unless Defendant is enjoined from

8  further violations of this section. Plaintiff and Class Members have no adequate remedy at law.

9     165.    Plaintiff and the Class Members are entitled to punitive or exemplary damages

10  pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violations were willful and, on

11  information and belief, Defendant is guilty of oppression, fraud, or malice as defined in Cal.

12  Civil Code § 3294.

13     166.    Plaintiff and Class Members have also suffered irreparable injury from these

14  unauthorized acts of disclosure, to wit: their personal, private, and sensitive information,

15  including contact address book data and information on online interactions, has been harvested,

16  viewed, accessed, stored, and used by Defendant, and have not been destroyed, and due to the

17  continuing threat of such injury, have no adequate remedy at law, entitling Plaintiff to injunctive

18  relief.

**CAUSE OF ACTION III**
**Violations of California's Invasion of Privacy Act,**
**California Penal Code § 630 et seq.**

21     167.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged

22  herein.

23     168.    California Penal Code section 631 provides, in part:

24         "Any person who . . . willfully and without the consent of all parties to
           the communication, or in any unauthorized manner, reads, or attempts to
25         read, or to learn the contents or meaning of any message, report, or
           communication while the same is in transit or passing over any wire, line,
26         or cable, or is being sent from, or received at any place within this state; or
           who uses, or attempts to use, in any manner, or for any purpose, or to
27         communicate in any way, any information so obtained, or who aids, agrees
           with, employs, or conspires with any person or persons to unlawfully do,
28

or permit, or cause to be done any of the acts or things mentioned above in this section, is punishable . . ."

169.    At all relevant times, Defendant's business practices of accessing the Mobile Device data of the Plaintiff and Class Members was without authorization and consent, including but not limited to, obtaining any and all communications involving their UDID.

170.    On information and belief, Plaintiff and Class Members, during one or more of their interactions on the Internet during the Class Period, communicated with one or more web entities based in California, including Path, or with one or more entities whose servers were located in California.

171.    Communications from the California web-based entities to Plaintiff and Class Members were sent from California.  Communications to the California web-based entities from Plaintiff and Class Members were sent to California.

172.    Plaintiff and Class Members did not consent to any of the Defendant's actions in intercepting, reading, and/or learning the contents of their communications with such California-based entities.

173.    Plaintiff and Class Members did not consent to Defendant's actions in using the contents of their communications with such California-based entities.

174.    Defendant is not a "public utility engaged in the business of providing communications services and facilities…" and the actions alleged herein by the Defendant were not undertaken "for the purpose of construction, maintenance, conduct or operation of the services and facilities of the public utility."

175.    The actions alleged herein by the Defendant were not undertaken with respect to any telephonic communication system used for communication exclusively within a state, county, city and county, or city correctional facility.

176.    The Defendant directly participated in the interception, reading, and/or learning of the contents of the communications between Plaintiff, Class Members and California-based web entities.

177.    Alternatively, and of equal violation of the California Invasion of Privacy Act, the

1    Defendant aided, agreed with, and/or conspired with third parties to unlawfully do, or permit, or

2    cause to be done all of the acts complained of herein.

3        178.    Plaintiff and Class Members have additionally suffered loss by reason of these

4    violations, including, without limitation, violation of the right of privacy.

5        179.    Unless restrained and enjoined, Defendant will continue to commit such acts.

6    Pursuant to Section 637.2 of the California Penal Code, Plaintiff and the Class have been injured

7    by the violations of California Penal Code section 631.  Wherefore, Plaintiff, on behalf of

8    himself and the Class Members, seeks damages and injunctive relief.

**CAUSE OF ACTION IV**
**Violations of California's Unfair Competition Law ("UCL"),**
**Cal. Business and Professions Code § 17200 *et seq.***

11        180.    Plaintiff incorporates by reference and realleges all paragraphs previously and

12    subsequently alleged herein.

13        181.    In violation of California Business and Professions Code § 17200 *et seq.*,

14    Defendant's conduct in this regard is ongoing and includes, but is not limited to, Defendant's

15    information privacy and confidentiality practices.

16        182.    By engaging in the above-described acts and practices, Defendant has committed

17    one or more acts of unfair competition within the meaning of the UCL and, as a result, Plaintiff

18    and the Class have suffered injury-in-fact and have lost money and/or property — specifically,

19    valuable personal information.

20        183.    In reasonable reliance on Defendant's misrepresentations and omissions, Plaintiff

21    downloaded the Path App, which caused Defendant's App with its functionality of downloading

22    Plaintiff's contact address book and tracking Plaintiff's interactions, to be placed on his Mobile

23    Device.

24        184.    Defendant's business acts and practices are unlawful, in part, because they violate

25    California Business and Professions Code § 17500 *et seq.*, which prohibits false advertising, in

26    that they were untrue and misleading statements relating to Defendant's performance of services

27    and with the intent to induce consumers to enter into obligations relating to such services, and

28    regarding which statements Defendant knew or which, and by the exercise of reasonable care

1   Defendant should have known, to be untrue and misleading. Defendant's business acts and

2   practices are also unlawful in that they violate the California Consumers Legal Remedies Act,

3   California Civil Code § 1750 *et seq.*, Penal Code § 502, and 18 U.S.C. § 2510 *et seq.* Defendant

4   is therefore in violation of the "unlawful" prong of the UCL.

5        185.   Defendant's business acts and practices are unfair because they cause harm and

6   injury in fact to Plaintiff and Class Members and for which Defendant has no justification other

7   than to increase, beyond what Defendant would have otherwise realized, its profit in fees from

8   advertisers and its information assets through the acquisition of consumers' personal

9   information. Defendant's conduct lacks reasonable and legitimate justification in that Defendant

10  has benefited from such conduct and practices while Plaintiff and the Class Members have been

11  misled as to the nature and integrity of Defendant's services and have, in fact, suffered material

12  disadvantage regarding their interests in the privacy and confidentiality of their personal

13  information. Defendant's conduct offends public policy in California tethered to the Consumers

14  Legal Remedies Act, the state constitutional right of privacy, and California statutes recognizing

15  the need for consumers to obtain material information that enables them to safeguard their own

16  privacy interests, including Cal. Civ. Code § 1798.80. In addition, Defendant's modus operandi

17  constitutes an unfair practice in two ways: (i) Defendant knows, or should know, that consumers

18  care about the status of personal information and mobile communication privacy but are unlikely

19  to be aware of the manner in which Defendant fails to fulfill its commitments to respect

20  consumers' privacy; and (ii) to the extent members do become aware of Defendant's conduct and

21  practices, Defendant's business model is designed to generate high traffic volume to make up for

22  the loss of revenue from members disaffected by Defendant's misleading messages. Defendant

23  is therefore in violation of the "unfair" prong of the UCL.

24       186.   Defendant's acts and practices were fraudulent within the meaning of the UCL

25  because they are likely to mislead the members of the public to whom they were directed.

26       187.   Plaintiff, on behalf of himself and on behalf of each member of the Class, seeks

27  individual restitution, injunctive relief, and other relief allowed under the UCL.

28  ///

**CAUSE OF ACTION V**
**Violations of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civ. Code § 1750 *et seq.***

188.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

189.    In violation of Civil Code § 1750 *et seq.* (the "CLRA"), Defendant has engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiff and Class Members, and such transactions are intended to and have resulted in the sales of services to consumers. Plaintiff and the Class Members are "consumers" as that term is used in the CLRA because they sought or acquired Defendant's good or services for personal, family, or household purposes. Defendant's past and ongoing acts and practices include but are not limited to:

a.    Defendant's representations that its services have characteristics, uses, and benefits that they do not have, in violation of Civil Code § 1770(a)(5);

b.    Defendant's representations that its services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Code § 1770(a)(7); and

c.    Defendant's advertisement of services with the intent not to sell those services as advertised, in violation of Civil Code § 1770(a)(9).

190.    Defendant's violations of Civil Code § 1770 have caused harm to Plaintiff and the other Class members and threaten additional injury if the violations continue. This harm includes the loss of the benefit of bargain of Defendant's services, transactions which were premised, in part, on consumers' reasonable expectations of the material accuracy of Defendant's representations in messages purporting to convey other Path members' expressions of interest, and Defendant's privacy representations.

191.    At this time, Plaintiff seeks only injunctive relief under this cause of action. Pursuant to Civil Code § 1782, in conjunction with the filing of this action, Plaintiff will notify Defendant in writing of the particular violations of Civil Code § 1770 and demand that Defendant rectify the problems associated with its behavior detailed above, which acts and

1  practices are in violation of Civil Code § 1770.

2      192.  If Defendant fails to respond adequately to Plaintiff's above-described demand

3  within 30 days of Plaintiff's notice, pursuant to Civil Code § 1782(b), Plaintiff will amend the

4  complaint to request damages and other relief, as permitted by Civil Code § 1780.

### CAUSE OF ACTION VI
### California Customer Records Act,
### Cal. Civ. Code § 1798.80 *et seq.*

7      193.  Plaintiff incorporates by reference and realleges all paragraphs previously alleged

8  herein.

9      194.  The California Customer Records Act mandates, among other things, that a

10  business take all responsible steps to destroy or arrange for the destruction of customer records,

11  including users' contact address book data, within its custody or control which contain personal

12  information which is no longer to be retained by the business.  Cal Civ. Code § 1798.81.

13      195.  A business may destroy customer records by erasing the information, or

14  modifying the personal information in those records to make it unreadable or undecipherable

15  through any means.  Cal. Civ. Code § 1798.81(b), (c).

16      196.  Defendant has violated Cal. Civ. Code § 1798.81 by failing to erase or otherwise

17  destroy its users' contact address book data and other data about the Plaintiff and Class Members

18  collected for a limited purpose.

19      197.  Pursuant to Cal. Civ. Code § 1798.84, Plaintiff and the Class seek damages,

20  including statutory damages of $3,000 per violation and injunctive relief.  Plaintiff and the Class

21  also seek attorney's fees pursuant to Cal. Code Civ. Proc. § 1021.5, as well as such other and

22  further relief as the Court deems just and proper.

### CAUSE OF ACTION VII
### Invasion of Privacy and Seclusion and Public Disclosure of Private Facts

25      198.  Plaintiff incorporates by reference and realleges all paragraphs previously alleged

26  herein.

27      199.  The elements of the invasion of privacy tort of public disclosure of private facts

28  are "(1) public disclosure (2) of a private fact (3) which would be offensive and objectionable to

1 the reasonable person and (4) which is not of legitimate public concern." *Shulman v. Group W*

2 *Productions, Inc.*, 18 Cal.4th 200 (1998). The elements of the invasion of privacy tort of

3 intrusion into seclusion are "(1) intrusion into a private place, conversation or matter, (2) in a

4 manner highly offensive to a reasonable person." *Id.* at 231.

5       200. The private affairs of the Plaintiff and Class Member include the contents of their

6 private contact address books and contact information data stored on their Mobile Devices. This

7 information is especially private and sensitive, because it reveals with whom the Mobile Device

8 user associates, identifies the Mobile Device owner's friends, business associates, and family,

9 may contain contacts that the mobile device owner may not want publicly disclosed, sales leads,

10 customer and client lists, and other similar information that reasonable people ordinarily

11 understand to be private, especially when stored in their private contact address book on their

12 Mobile Device.

13       201. Defendant's actions relating to Plaintiff's and Class Members' private contact

14 address book data , which were in violation of law and in flagrant contravention of contractual

15 developer obligations, resulted in the taking and the public disclosure of such sensitive private

16 information, as well as in intrusion into their private matters.

17       202. Plaintiff's and the Class Members' private contact address book data is not a

18 matter of legitimate public concern. Therefore, publicizing, disseminating, exposing or

19 surreptitiously obtaining Plaintiff's and Class Members' private contact address book data from

20 their Mobile Devices is and will continue to be regarded as <u>highly</u> offensive and objectionable to

21 reasonable people, especially where, as here, the commission of a crime (i.e., the illegal and

22 unauthorized accessing of a computer and copying and use of its data) was necessary for

23 Defendant Path to first acquire the contact address book data and learn their contents before their

24 dissemination of the information.

25       203. Plaintiff and the Class Members were, and continue to be, damaged as a direct

26 and/or proximate result of Defendant's invasion of their privacy by the public disclosure of their

27 private facts – the contents of their private contact address books from their Mobile Devices.

28 Plaintiff and the Class members are entitled to recover actual and nominal damages. Such

damages include expenses for securing their Mobile Devices from another similar invasion of privacy, costs associated with resecuring the data and their Mobile Devices and computing devices, and procuring and verifying the removal, deletion and scrubbing of the data and data points from the Defendant's records, computers and systems, out of pocket expenses, and other economic and non-economic harm, for which they are entitled to compensation.

204.    Defendant's wrongful actions constitute invasions of Plaintiff's and Class Members' privacy by disturbing their seclusion and publicly disclosing their private facts contained in their contact address books.  As a direct and proximate result, Plaintiff and the Class Members were harmed and suffered damages.

## CAUSE OF ACTION VIII
### Conversion

205.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

206.    Plaintiff's and Class Members' Mobile Device data, including but not limited to their Mobile Devices' contact data, is being used by Defendant to obtain sensitive and personal identifying information derived from Plaintiff's and Class Members' Mobile Devices' contact address books and online interactions. Such property, owned by the Plaintiff and Class Members, is valuable to the Plaintiff and Class Members.

207.    Plaintiff's and Class Members' Mobile Devices and computing devices also use bandwidth. Defendant's activities, made the basis of this action, used without notice or authorization such bandwidth for purposes not contemplated and not agreed to by Plaintiff and Class Members when they downloaded Defendant Path's App. Such property, owned by the Plaintiff and Class Members, is valuable to the Plaintiff and Class Members.

208.    Defendant unlawfully exercised dominion over said property and thereby converted Plaintiff's and Class Members' property, by providing sensitive and personal identifying information to third parties and by using Plaintiff's and Class Members' bandwidth for data mining, in violation of the collective Class allegations, made the basis of this action.

209.    Plaintiff and Class Members were damaged thereby.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CAUSE OF ACTION IX
### Trespass to Personal Property / Chattels

210.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

211.    The common law prohibits the intentional intermeddling with personal property, including a mobile device or computing device, in possession of another which results in the deprivation of the use of the personal property or impairment of the condition, quality, or usefulness of the personal property.

212.    By engaging in the acts alleged in this complaint without the authorization or consent of Plaintiff and Class Members, Defendant dispossessed Plaintiff and Class Members from use and/or access to their Mobile Devices and computing devices, or parts of them. Further, these acts impaired the use, value, and quality of Plaintiff's and Class Members' Mobile Devices and computing devices.  Defendant's acts constituted an intentional interference with the use and enjoyment of the Mobile Devices and computing devices.  By the acts described above, Defendant has repeatedly and persistently engaged in trespass to personal property in violation of the common law.

213.    Without Plaintiff's and Class Members' consent, or in excess of any consent given, Defendant knowingly and intentionally accessed Plaintiff's and Class Members' property, thereby intermeddling with Plaintiff's and Class Members' right to possession of the property and causing injury to Plaintiff and the Class Members.

214.    Defendant engaged in deception and concealment in order to gain access to Plaintiff's and Class Members' Mobile Devices and computing devices.

215.    Defendant undertook the following actions with respect to Plaintiff's and Class Members' Mobile Devices and computing devices:

    a)    Defendant accessed and obtained control over the users' Mobile Device and/or computing device;

    b)    Defendant caused the installation of a new code onto the hard drive of the user's Mobile Device and/or computing device; and

    c)    Defendant programmed the operation of its code to function and operate

without notice or consent on the part of the owner of the Mobile Device and/or computing device, and outside of the control of the owner of the Mobile Device and/or computing device.

216.    All these acts described above were acts in excess of any authority any user granted when they downloaded the Defendant's App, and none of these acts was in furtherance of users using the Defendant's App. By engaging in deception and misrepresentation, whatever authority or permission Plaintiff and Class Members may have granted to Defendant Path was exceeded.

217.    Defendant's installation and operation of its App used, interfered, and/or intermeddled with Plaintiff's and Class Members' Mobile Devices and computing devices. Such use, interference and/or intermeddling was without Plaintiff's and Class Members' consent or, in the alternative, in excess of Plaintiff's and Class Members' consent.

218.    Defendant's installation and operation of its App constitutes trespass, nuisance, and an interference with Plaintiff's and Class Members' chattels, to wit, their Mobile Devices and computing devices.

219.    Defendant's installation and operation of its App impaired the condition and value of Plaintiff's and Class Members' Mobile Devices and computing devices.

220.    Defendant's trespass to chattels, nuisance, and interference caused real and substantial damage to Plaintiff and Class Members.

221.    As a direct and proximate result of Defendant's trespass to chattels, nuisance, interference, unauthorized access of and intermeddling with Plaintiff's and Class Members' property, Defendant has injured and impaired the condition and value of Class Members' Mobile Devices and computing devices, as follows:

   a) By consuming the resources of and/or degrading the performance of Plaintiff's and Class Members' Mobile Devices and computing devices (including space, memory, processing cycles, and Internet connectivity);

   b) By diminishing the use of, value, speed, capacity, and/or capabilities of Plaintiff's and Class Members' Mobile Devices and computing devices;

   c) By devaluing, interfering with, and/or diminishing Plaintiff's and Class Members' possessory interests in their Mobile Devices and computing devices;

d) By altering and controlling the functioning of Plaintiff's and Class Members' Mobile Devices and computing devices;

e) By infringing on Plaintiff's and Class Members' rights to exclude others from their Mobile Devices and computing devices;

f) By infringing on Plaintiff's and Class Members' rights to determine, as owners of their Mobile Devices and computing devices, which programs should be installed and operating on their Mobile Devices and computing devices;

g) By compromising the integrity, security, and ownership of Plaintiff's and Class Members' Mobile Devices and computing devices; and

h) By forcing Plaintiff and Class Members to expend money, time, and resources in order to remove the programs and files installed on their Mobile Devices and computing devices without notice or consent.

## CAUSE OF ACTION X
### Unjust Enrichment

222.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

223.    A benefit has been conferred upon Defendant by Plaintiff and the Class.  On information and belief, Defendant, directly or indirectly, has received and retained information regarding Plaintiff's and Class Members' contact address books and interactions that is otherwise private, confidential, and not of public record, and/or has received revenue from the use and provision of such information.

224.    Defendant appreciates or has knowledge of said benefit.

225.    Under principles of equity and good conscience, Defendant should not be permitted to retain the information and/or revenue that it acquired by virtue of its unlawful conduct.  All funds, revenues, and benefits received by Defendant rightfully belong to Plaintiff and the Class, which Defendant has unjustly received as a result of its actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Hernandez, on behalf of himself and the Class, prays for the following relief:

a) With respect to all counts, declaring the action to be a proper class action and

1    designating Plaintiff and his counsel as representatives of the Class;

2    b)  As applicable to the Class mutatis mutandis, awarding injunctive and equitable

3    relief including, inter alia: (i) prohibiting Defendant from engaging in the acts

4    alleged above; (ii) requiring Defendant to disgorge all of its ill-gotten gains to

5    Plaintiff and the other Class members, or to whomever the Court deems

6    appropriate (other than for Plaintiff's claim under the CLRA); (iii) requiring

7    Defendant to delete all data surreptitiously or otherwise collected through the acts

8    alleged above; (iv) requiring Defendant to provide Plaintiff and the other Class

9    Members a means to easily and permanently decline any participation in any data

10   collection activities by means of Path or any similar online activity, in any present

11   or future iteration of Path; (v) awarding Plaintiff and Class Members full

12   restitution of all benefits wrongfully acquired by Defendant by means of the

13   wrongful conduct alleged herein (other than for Plaintiff's claim under the

14   CLRA); and (vi) ordering an accounting and constructive trust imposed on the

15   data, funds, or other assets obtained by unlawful means as alleged above, to avoid

16   dissipation, fraudulent transfers, and/or concealment of such assets by Defendant;

17   c)  A permanent injunction enjoining and restraining Defendant, and all persons or

18   entities acting in concert with it during the pendency of this action and thereafter

19   perpetually, from:

20   1)  initiating or procuring transmission of unsolicited commercial electronic

21   messages on or through Class Members' Mobile Devices, Class Members'

22   networks, or to Path users;

23   2)  accessing or attempting to access Class Members' networks, data,

24   information, user information, profiles, and/or Mobile Devices;

25   3)  soliciting, requesting, or taking any action to induce Path visitors to

26   provide identifying information, or representing that such solicitation,

27   request, or action is being done with any Class Member's authorization or

28   approval;

4)  retaining any copies, electronic or otherwise, of any Class Members'
information, including contact address book data, obtained through
illegitimate and/or unlawful actions;

5)  engaging in any activity that alters, damages, deletes, destroys, disrupts,
diminishes the quality of, interferes with the performance of, or impairs
the functionality of Class Members' Mobile Devices, data, and email or
other services; and

6)  engaging in any unlawful activities alleged in this complaint.

d)  Except for the cause of action for violation of the CLRA, an order requiring
Defendant to account for, hold in constructive trust, pay over to Class Members,
and otherwise disgorge all profits derived by Defendant from its unlawful conduct
and unjust enrichment, as permitted by law;

e)  Except for the cause of action for violation of the CLRA, award restitution against
Defendants in amounts to be proved;

f)  Except for the cause of action for violation of the CLRA, an award to Plaintiff and
Class Members of damages, including but not limited to, compensatory, statutory,
exemplary, aggravated, and punitive damages, as permitted by law and in such
amounts to be proven at trial;

g)  Except for the cause of action for violation of the CLRA, an award to Class
Members of reasonable costs, including reasonable attorneys' fees;

h)  Except for the cause of action for violation of the CLRA, for pre-and post-
judgment interest as allowed by law; and

i)  For such other relief as the Court may deem just and proper.

Dated: March 26, 2012

Respectfully submitted,
STRANGE & CARPENTER


By:_____
      BRIAN STRANGE
      One of the Attorneys for Plaintiff,
      individually and on behalf of a Class of
      similarly situated individuals

      STRANGE & CARPENTER
      Brian R. Strange (Cal. Bar. No. 103252)
      LACounsel@earthlink.net
      12100 Wilshire Boulevard, Suite 1900
      Los Angeles, CA 90025
      Telephone: (310) 207-5055
      Facsimile: (310) 826-3210

      Joseph H. Malley (*not admitted*)
      malleylaw@gmail.com
      Law Office of Joseph H. Malley
      1045 North Zang Boulevard
      Dallas, TX 75208
      Telephone: (214) 943-6100

      *Attorneys for Plaintiff*

1

**JURY DEMAND**

2

Plaintiff requests trial by jury of all claims that can be so tried.

3

Respectfully submitted,

Dated: March 26, 2012                    STRANGE & CARPENTER

4

5

By:_____

6

BRIAN STRANGE
One of the Attorneys for Plaintiff,

7

individually and on behalf of a Class of
similarly situated individuals

8

9

STRANGE & CARPENTER
Brian R. Strange (Cal. Bar. No. 103252)

10

LACounsel@earthlink.net
12100 Wilshire Boulevard, Suite 1900

11

Los Angeles, CA 90025
Telephone: (310) 207-5055

12

Facsimile: (310) 826-3210

13

Joseph H. Malley (*not admitted*)

14

malleylaw@gmail.com
Law Office of Joseph H. Malley

15

1045 North Zang Boulevard
Dallas, TX 75208

16

Telephone: (214) 943-6100

17

*Attorneys for Plaintiff*

18

19

20

21

22

23

24

25

26

27

28